Guillermo Atiles Moréu, en su carácter de Administrador del Fondo del Seguro del Estado, recurrente, *v.* Comisión Industrial de Puerto Rico, demandada; Juan de los Santos Monge, patrono no asegurado.

Núm. 361.—*Sometido:* Abril 9, 1947.—*Resuelto:* Junio 24, 1947.

*A. de Jesús Matos, A. Sandín del Manzano* e *I. Marrero*, abogados del recurrente; *Víctor J. Vidal González*, abogado de la beneficiaria del obrero fallecido; *Luis M. Pagán*, abogado del patrono Juan de los Santos Monge.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

De los autos de este recurso se desprenden los siguientes hechos incontrovertidos:

Félix Rexach Ríos es dueño de una cantera situada en el sitio conocido con el nombre de Seboruco, en Santurce, Juan de los Santos Monge de un autocamión y Ramón Fournier de un cementerio. Juan de los Santos Monge convino con Félix Rexach Ríos en extraer tierra o zahorra de la cantera de este último, pagándole por ella a razón de 50 centavos por cada camión. Fournier por su parte convino con De los Santos Monge en pagar a éste $4.50 por cada camión de zahorra que se le entregara en su cementerio. La extracción de la tierra, el ponerla en el *truck* y el conducir el mismo de la cantera al cementerio se hacía totalmente por cuenta de De los Santos Monge, es decir, éste pagaba 50 centavos por la zahorra en la cantera y cobraba $4.50 por cada camión de ella descargada en el cementerio, pagando él los peones y el chófer a razón de 25 centavos por cada camión a los primeros y a razón de 50 centavos al último. En 1 de agosto de 1945, entre 9:30 y 10 a. m., extraían zahorra de la cantera de Rexach bajo las condiciones que ya se han expuesto, cuatro obreros por cuenta de De los Santos Monge para luego trasladar la misma al Cementerio Fournier. Mientras esto se hacía ocurrió un derrumbe, varios de los obreros fueron lesionados y uno de ellos, Escolástico Febres, falleció a consecuencia de los golpes recibidos. Félix Rexach Ríos y Ramón Fournier eran patronos asegurados con el Fondo del Seguro del Estado, mas no así Juan de los Santos Monge, no obstante el hecho de venir éste obligado a ello dado el número de obreros que utilizaba. Artículo 18 de la Ley 45 de 18 de abril de 1935 (págs. 251, 297).

La única cuestión a determinarse en este recurso, en su consecuencia, es si a virtud de los hechos antes expuestos Ramón Fournier en su carácter de patrono asegurado responde con su seguro del accidente ocurrídole a Escolástico Febres. Por tratarse de que De los Santos Monge era un patrono no asegurado, el Administrador del Fondo del Seguro del Estado elevó el expediente a la Comisión Industrial[1] y ésta invocando lo resuelto por nosotros en los casos de *Montaner* v. *Comisión Industrial*, 57 D.P.R. 272 y *Montaner* v. *Comisión Industrial*, 59 D.P.R. 285, decidió que como Juan de los Santos Monge no era un patrono asegurado, no obstante estar obligado a serlo, y siendo éste un contratista independiente, Ramón Fournier que era un patrono asegurado respondía del accidente con su seguro. Contra esa resolución de la Comisión Industrial, cuya reconsideración fué más tarde denegada, ha acudido el Administrador del Fondo del Seguro del Estado ante nos mediante el recurso de revisión provisto por el artículo 11 de la Ley núm. 45 de 1935, supra, según fué enmendado por la núm. 121 de 2 de mayo de 1940 (pág. 729).

██ Sostiene el recurrente que en este caso no hay responsabilidad alguna de parte de Fournier toda vez que la relación de contratista independiente con respecto a un patrono asegurado surge tan sólo cuando existe entre el principal y el contratista independiente un contrato a virtud del cual delega el patrono en el contratista independiente y éste se obliga a realizar o ejecutar parte de la obra, empresa, negocio o trabajo a que está dedicado el patrono principal, no pudiendo surgir la relación de obrero y patrono entre un empleado del supuesto contratista independiente y el patrono principal cuando meramente existe entre las partes contratantes una transacción de compraventa, como ocurre en este caso. Está en lo cierto el Administrador.

---

[1]Véase la sección 15 de la Ley 45 de 1935, según quedó enmendada por la núm. 162 de 14 de mayo de 1943 (pág. 525).

En el caso de *Montaner* v. *Comisión Industrial*, 57 D.P.R., supra, la West India Oil Company empleó a Antonio Rivera para que éste le soldara un tanque de gasolina utilizado por un agente de ella en la venta de ese producto en el pueblo de Morovis. Rivera fué a hacer el trabajo auxiliado por un sobrino y un hijo suyos y al aplicar al tanque el soplete para efectuar la soldadura aquél estalló, produciendo la muerte del sobrino. Se llegó a la conclusión de que el seguro de la West India Oil Company respondía, toda vez que Rivera era un contratista independiente que prestaba servicios para ésta y no estaba asegurado con el Fondo del Estado.

En el de *Montaner* v. *Comisión Industrial*, 59 D.P.R., supra, Andrés Ortiz Vélez era un obrero empleado por Pablo Pagán, quien cedió en arrendamiento un camión de su propiedad para que José Vives pudiera arrastrar cañas de azúcar de un barrio de la municipalidad de Utuado a la grúa de la Central Cambalache en otro barrio. Ortiz Vélez sufrió un accidente mientras trabajaba en el truck de Pagán transportando cañas pertenecientes a la Central Cambalache. Se resolvió que ésta por ser un patrono asegurado respondía con su seguro, ya que Vives y Pagán no estaban asegurados y eran contratistas independientes de ella.

En el último caso de Montaner ya citado, que cubría dos recursos, se dice también que Angel Valle trabajaba en un camión del patrono no asegurado Martín Linares. Éste explotaba dos camiones en el arrastre de cañas y convino con Juan Estades en el arrimo de las mismas desde la finca de éste hasta la Central Los Caños. El camión que conducía las cañas de Estades se volcó, pereciendo Angel Valle. Se decidió que Martín Linares era un contratista independiente de Juan Estades y que al no estar aquél asegurado, pero sí Estades, este último era responsable.

La ligera reseña que hemos expuesto de los hechos envueltos en los dos casos que anteceden revelará inmediatamente que en ellos estaba envuelta la prestación de servicios por el

contratista independiente para beneficio del patrono asegurado, es decir en ambos los tres contratistas independientes mencionados tenían contratos de arrendamiento de servicios con los dueños del negocio o industria: Rivera con la West India Oil Company, Vives y Pagán con la Central Cambalache y Linares con Juan Estades. También se habrá notado que los servicios prestados por cada uno de los contratistas independientes lo eran en relación con la ocupación, industria o negocio del patrono asegurado con el Fondo del Seguro del Estado.

En el recurso de autos, sin embargo, la prueba no demuestra que Juan de los Santos Monge hubiera convenido en realizar ningún trabajo para beneficio de Ramón Fournier, en relación con la ocupación, industria o negocio de éste. Aquí meramente se acordó entre De los Santos Monge y Fournier que el último pagaría al primero $4.50 por cada camión de tierra o zahorra que se descargara en su cementerio. No había en forma alguna un contrato de arrendamiento de servicios por parte de De los Santos Monge en favor de Fournier. Meramente había uno o varios contratos de compraventa. Siendo ello así, la doctrina sentada en los dos casos de *Montaner* v. *Comisión* antes citados no es aplicable al presente.

Por otra parte, en ninguno de los casos del Continente que hemos visto, en que se ha aplicado el mismo principio establecido en los referidos casos de Montaner, hemos notado que se ha tratado de contratos de compraventa. Más bien hemos visto que en todos ellos han estado envueltos contratos de arrendamiento de servicios en favor del patrono asegurado.

Si se examina el artículo 19 de la Ley número 45 de 1935 ((1) pág. 297) y la definición que de "contratista" se hace en el citado caso del tomo 57, a las págs. 276 y 277, se notará que según ellos se requiere un contrato de trabajo, la realización de algún servicio por el llamado contratista independiente no asegurado para beneficio del dueño cubierto por el seguro.

Aquí, repetimos, no estaba envuelta la prestación de tales servicios, la realización de ningún trabajo por Juan de los Santos Monge. Únicamente estaban envueltos varios contratos de compraventa.

*Siendo ello así, debe revocarse la resolución dictada por la Comisión Industrial en 5 de junio de 1946, cuya reconsideración fué denegada en 15 de julio siguiente.*