

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |
|---|---|
| Carmen Meléndez Villafañe<br>         Peticionaria<br><br>                   v.<br><br>Corporación del Fondo del Seguro<br>del Estado<br>         Recurrida<br><br>Comisión Industrial de<br>Puerto Rico<br>         Agencia   - Revisada<br><br>Thomas & Betts Corp.<br>         Patro   no | Certiorari<br><br>2011 TSPR 136<br><br>182 DPR _____ |

Número del Caso: AC        - 2009 - 94

Fecha: 21 de septiembre de 2011

Tribunal de Apelaciones:

         Región Judicial de San Juan Panel II

Juez Ponente:
                     Hon. Edgardo Rivera García

Abogado de la Parte Peticionaria:

                 Lcda. Yanira García Toledo

Materia: Compensabilidad y Tardanza

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación            oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Carmen Meléndez Villafañe
   Peticionaria

       v.

Corporación del Fondo del
Seguro del Estado
   Recurrida                    AC-2009-94

Comisión Industrial de
Puerto Rico
   Agencia-Revisada

Thomas & Betts Corp.
   Patrono


Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo


San Juan, Puerto Rico, a 21 de septiembre de 2011.

En esta ocasión nos corresponde interpretar por primera vez una disposición del Art. 3 de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1935, que limita la compensación de una enfermedad ocupacional a que la "última exposición al riesgo de adquirir la enfermedad[,] ocurra dentro de los doce meses anteriores a la fecha en que se observaron las primeras manifestaciones de la incapacidad causada por la misma". Debemos resolver si, como lo interpreta la agencia recurrida, un empleado tiene un término de doce meses para

reclamar una enfermedad ocupacional. Resolvemos en la negativa.

I

La Sra. Carmen Meléndez Villafañe laboró en la compañía Tomas & Bett Corporation desde el 1995 hasta el día que fue despedida, el 30 de noviembre de 2004. En dicho periodo laboral se desempeñó en el área de máquinas de soldadura de "breakers" de la compañía. Como parte de sus funciones ésta realizaba soldaduras de piezas pequeñas y, en ocasiones, le correspondía vaciar el contenido de recipientes pesados en bandejas. En el desempeño de dichas labores la señora Meléndez Villafañe comenzó a sufrir dolores en el cuello, el hombro, el brazo y se le adormecían las manos.

Así, por causa de esas molestias, la señora Meléndez Villafañe comenzó a recibir tratamiento médico privado desde el 1998. Luego de ser despedida, ésta continuó visitando su médico privado cada vez que sentía molestias en sus extremidades. En una de esas ocasiones, su doctor le recomendó que investigara si aún podía solicitar los beneficios de la Corporación del Fondo del Seguro del Estado (C.F.S.E.), ya que su condición había surgido como consecuencia de su trabajo. En vista de esto, el 31 de julio de 2006, esto es, 1 año y 8 meses después de haber cesado en su trabajo, la señora Meléndez Villafañe presentó una petición de informe voluntario por accidente del trabajo ante la C.F.S.E.

A raíz de esa petición, los médicos de la C.F.S.E. evaluaron a la señora Meléndez Villafañe y determinaron que ciertamente ésta sufría una enfermedad ocupacional que describieron como trauma cervical, trauma de manos y trauma del hombro izquierdo. Además, los expertos de la C.F.S.E. determinaron que tales condiciones patológicas habían surgido como consecuencia de la relación obrero-patronal que la peticionaria sostuvo con su patrono, Tomas & Bett Corporation; que la señora Meléndez Villafañe padecía de sus síntomas desde 1998 y que el último día que trabajó en la compañía asegurada había sido el 30 de noviembre de 2004.

Sin embargo y pese a lo anterior, el Administrador de la C.F.S.E. determinó que, como la petición de informe voluntario sometido por la peticionaria no se había presentado dentro de los doce meses desde la última exposición al riesgo, la peticionaria no tenía derecho a gozar de los beneficios de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1935, según enmendada.[1] Por lo tanto, ordenó el cierre y archivo del caso. Específicamente la decisión del Administrador de la C.F.S.E. señaló lo siguiente:

> Visto los hechos que anteceden y la evidencia que obra en autos, se resuelve que la peticionaria en este caso sufrió una enfermedad ocupacional pero por haber incurrido en caducidad no tiene derecho a los beneficios de la Ley de sistema de compensaciones por accidente del trabajo.

---

[1] 11 L.P.R.A. sec. 1 *et seq.*

Véase  Maisonet  Feliciano  vs.  Fondo  del Seguro del Estado, 96 J.T.S. 166.[2]

En junio de 2007 la señora Meléndez Villafañe apeló oportunamente la decisión del Administrador de la C.F.S.E. ante la Comisión Industrial (Comisión).[3] Ésta celebró una vista pública el 4 de febrero de 2009 en la que la señora Meléndez Villafañe declaró que desde 1998 acudía a tratamiento médico privado cuando sentía dolor de espalda por causa del trabajo. No obstante, señaló que ella no sabía que podía comparecer a la C.F.S.E. hasta que se enteró de ello, por medio de terceras personas, un tiempo después de haber sido despedida. Luego de realizar la evaluación correspondiente la Oficial Examinadora de la Comisión recomendó confirmar la decisión del Administrador de la C.F.S.E. De esa forma, la Comisión acogió dicha recomendación y confirmó la decisión de la C.F.S.E. La Comisión sostuvo que, en este caso, la defensa de caducidad estaba disponible a favor del Administrador.

Inconforme, la señora Meléndez Villafañe acudió al Tribunal de Apelaciones mediante recurso de revisión. En éste, impugnó la resolución de la Comisión porque, entre otras cosas, ésta era contraria a lo resuelto en Maisonet v. F.S.E., 142 D.P.R. 194 (1996). No obstante, el foro apelativo intermedio confirmó la decisión recurrida y concluyó, en lo pertinente, que conforme al "esquema

---

[2] Véase Apéndice del Recurso de Apelación, pág. 39.

[3] Íd., pág. 41.

estatuario, y la interpretación del Fondo y la Comisión Industrial, **el término de caducidad para reclamar sobre una enfermedad ocupacional, es de doce meses a partir de la última exposición al riesgo** […] por lo que correctamente el Fondo y la Comisión resolvieron que el término de caducidad había expirado para la recurrente".[4]

El Tribunal de Apelaciones sostuvo, además, que el término de tres años para presentar una reclamación de enfermedad ocupacional comenzó a transcurrir en el 1998, cuando la señora Meléndez Villafañe comenzó a visitar a su médico privado. Señaló que en el contexto de una diligencia razonable, ésta debió conocer la naturaleza de su condición o incapacidad con anterioridad. Por consiguiente, sostuvo que su reclamación era tardía.

La señora Meléndez Villafañe presentó oportunamente un escrito de apelación ante este Tribunal y sostuvo que el Tribunal de Apelaciones cometió los errores siguientes:

> 1) Erró el Tribunal de Apelaciones al confirmar la Resolución de la Honorable Comisión Industrial notificada el 5 de mayo de 2009, al variar el estado de derecho actual y la interpretación oficial adoptada por este Tribunal sobre el mismo asunto, mediante casos previos, particularmente cuando dicha interpretación ya había sido avalada por el Tribunal Apelativo y [por el] propio Tribunal Supremo de Puerto Rico.
>
> 2) Erró el Tribunal Apelativo al resolver que la defensa de caducidad estaba disponible en este caso a favor del Administrador.

---

[4] Íd., pág. 8. (Énfasis suplido).

3) Erró el Honorable Tribunal de Apelaciones al aplicar la norma deferencial hacia las agencias administrativas.

El 9 de abril de 2010 acogimos el escrito como una petición de *certiorari* y expedimos. El 11 de junio de 2010 la peticionaria presentó su alegato, más no así la recurrida.[5] Con el sólo beneficio de la comparecencia de la peticionaria, procedemos a resolver.

## II

Reiteradamente hemos señalado que la Ley del Sistema de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1935, según enmendada (Ley Núm. 45),[6] es un estatuto de carácter remedial que a base de los propósitos que la inspiran debe interpretarse liberalmente a favor del obrero.[7] Dicho estatuto se creó con la intención de establecer un sistema de seguro compulsorio y exclusivo con el fin de compensar al obrero o empleado que sufra lesiones, se inutilice o muera, al ejercer cualquier acto o función inherente en el desempeño de su trabajo.[8] De igual forma, el sistema provisto por la Ley Núm. 45 le brinda al

---

[5] El 9 de agosto de 2010 le concedimos a la C.F.S.E. un término de 10 días para presentar su alegato, pero ésta no compareció.

[6] 11 L.P.R.A. sec. 1 *et seq.*

[7] Art. 2 de la Ley Núm. 45, 11 L.P.R.A. sec. 2; Rivera v. Ins. Wire Prods., Corp., 158 D.P.R. 110, 126-127 (2002).

[8] González v. Multiventas, 165 D.P.R. 873, 881 (2005); Toro v. Policía, 159 D.P.R. 339, 353 (2003); Martínez v. Bristol Myers, Inc., 147 D.P.R. 383 (1999).

obrero un remedio rápido, eficiente y menos complejo que una reclamación ordinaria en daños.[9]

En lo pertinente a la controversia que nos ocupa, el inciso (i) del Art. 3 de la Ley Núm. 45 establece expresamente una tabla con las 42 enfermedades ocupacionales que son compensables al amparo de dicha ley.[10] El referido inciso dispone, además, que se considerarán como enfermedades ocupacionales compensables las que el Administrador de la C.F.S.E. disponga por reglamento y, en lo pertinente a esta controversia, también señala que,

> se considerarán enfermedades ocupacionales compensables todas aquellas enfermedades que se contraigan en el curso del trabajo, como consecuencia de un riesgo peculiar a la industria, proceso, ocupación o empleo, y como resultado de la directa exposición del obrero o empleado a dicho riesgo en el normal desempeño de su trabajo **siempre que la última exposición al riesgo de adquirir la enfermedad ocurra dentro de los doce meses anteriores a la fecha en que se observaron las primeras manifestaciones de la incapacidad causada por la misma, sin perjuicio de lo que más adelante se dispone.**[11] (Énfasis suplido.)

Conforme a lo anterior, más allá de las expresamente determinadas en la tabla y las que el Administrador pueda designar, se considerarán enfermedades ocupacionales todas aquellas que se adquieran en el transcurso del trabajo como consecuencia de un riesgo propio de la industria, proceso,

---

[9] Toro v. Policía, *supra*; Soc. de Gananciales v. Royal Bank de P.R., 145 D.P.R. 178, 199 (1998).

[10] 11 L.P.R.A. sec. 3 (i). Vale señalar que aun cuando la Ley Núm. 45 ha sufrido varias enmiendas a través de los años, el inciso aquí discutido ha quedado inalterado.

[11] Íd.

ocupación o empleo. Ello, si esas enfermedades resultan de la exposición directa del obrero o empleado a dicho riesgo en el normal desempeño de su empleo. Tiene que existir una relación causal entre la enfermedad y el empleo. En esencia, se tiene que demostrar que la enfermedad fue adquirida en el transcurso del empleo y por causa de la exposición directa de un riesgo propio o peculiar de éste.

En cuanto a lo que constituye un "riesgo propio o peculiar de la ocupación o empleo", en Hernández Nieves v. Comisión Industrial, 90 D.P.R. 340, 356 (1964) tuvimos la oportunidad de definir tal expresión en términos generales. En esa ocasión reconocimos que,

> se refiere a la existencia de un riesgo constante, inherente a, particular a la actividad dentro de la cual el obrero está obligado a realizar su labor. No se trata de un peligro al cual el trabajador estuviera igualmente expuesto fuera de su empleo, no es en riesgo común a la vecindad. Simplemente, por razón del empleo, el obrero debe haber sido sometido a una exposición excepcional. Tampoco es indispensable que para ello se establezca que el riesgo ha afectado en igual forma a otros trabajadores de la industria o empleo. Solamente que la exposición a que ha estado sometido el obrero es propia de la industria. Generalmente ello puede deducirse del hecho de que el padecimiento del obrero no puede ser atribuido a causa otra alguna que no sea de carácter ambiental. En gran medida puede ser un peligro en las condiciones de trabajo que el patrono puede evitar adoptando y proporcionando mayores y mejores medidas de seguridad.[12]

Ahora bien, como señalamos, la Asamblea Legislativa sujetó las enfermedades ocupacionales –las enumeradas en la tabla, como las que son producto del riesgo propio del

---

[12] Íd., pág. 356.

empleo- a que "la última exposición al riesgo de adquirir la enfermedad ocurra dentro de los doce meses anteriores a la fecha en que se observaron las primeras manifestaciones de la incapacidad causada por la misma" o, lo que es lo mismo, **que las primeras manifestaciones de la incapacidad surjan dentro de los doce meses siguientes a la última exposición.**[13] Precisamente es esta disposición el eje principal de la controversia aquí versada, por lo que nos centraremos en su discusión y análisis.

### III

Al examinar esta disposición del inciso (i) del Art. 3 de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, *supra*, es evidente que nos enfrentamos a un término de doce meses que comienza a transcurrir desde la última exposición al riesgo que tuvo el empleado. Esa última exposición al riesgo muy bien puede ser el último día de empleo o el último día en que el empleado se desempeñó en el área que lo exponía al riesgo propio del empleo.

---

[13] Excepto en los casos de enfermedades causadas "por aire bajo compresión, o por cambios patológicos retardados de los huesos, sangre o pulmones de carácter maligno ocasionados por exposición ocupacional o contacto con arsénico, benzol, berilio, cadmio, cromio, plomo, fluoro, o exposición a rayos X, radium, o sustancias radioactivas, u otras sustancias, cualquiera que sea su naturaleza, que puedan producir efectos retardados sobre el organismo humano, no será perjudicado por el transcurso del término de doce meses después de la última exposición." 11 L.P.R.A. sec. 3 (i). Además, el legislador estableció que no se considerarán ocupacionales aquellas enfermedades de tipo contagioso, epizootias, endemias y epidemias, excepto cuando fueran contraídas por personal de laboratorio expuesto al riesgo de éstas en el curso normal del trabajo por razón de manipular o examinar material infectivo. Íd. Véase Hernández Nieves v. Comisión Industrial, *supra*, pág. 354.

Como principio básico de hermenéutica jurídica no debemos analizar el término en cuestión en el vacío o fuera del contexto de la ley que lo contiene, esto es, la Ley Núm. 45. Más bien, éste término o plazo de tiempo debe interpretarse junto a las demás disposiciones del inciso y el propio estatuto. Al considerar esta disposición en su contexto es evidente que en ambos casos -las enfermedades enumeradas en la tabla, como las que son producto del riesgo propio del empleo- el término de doce meses **es un asunto que versa sobre el carácter compensativo de la enfermedad y no sobre el término prescriptivo de la acción a reclamar**. No existe ninguna expresión que disponga que dicho término se refiere a un periodo de reclamación de beneficios. Por lo tanto, ante la pregunta de si ese término de doce meses es el término que tiene un obrero o empleado para acudir al C.F.S.E. para reclamar alguna enfermedad ocupacional, la respuesta claramente es en la negativa.

Y es que, como señala el propio inciso (i) del Art. 3 de la Ley Núm. 45 más adelante:

> Las reclamaciones en casos de enfermedades ocupacionales deberán establecerse dentro de un periodo de tiempo que no exceda de tres (3) años a partir de la fecha en que el obrero adquiera conocimiento de la naturaleza de la incapacidad, y de su relación con el trabajo, o pudiera haberla adquirido mediante el ejercicio de razonable diligencia.[14]

---

[14] 11 L.P.R.A. sec. 3.

Al examinar esta disposición que establece este término de tres años, y considerando, como señalamos en Maisonet v. F.S.E., 142 D.P.R. 194, 198-199 (1996), el "justo sentimiento humanitario y… [el] alto espíritu de justicia social" que inspiran la Ley Núm. 45, en el mencionado precedente determinamos que el referido término de tres años comienza a transcurrir desde que el empleado conoce que su condición es incapacitante ya que se ha tornado severa. Además, en Maisonet v. F.S.E., *supra*, citamos con aprobación al Prof. Arthur Larson y reconocimos que el término para entablar la reclamación no comienza a transcurrir hasta que el reclamante, actuando como una persona prudente y razonable, pueda percatarse no sólo de que su condición puede guardar relación con su empleo, sino que también pueda reconocer la naturaleza y severidad de su enfermedad.[15] Con ello se intentó evitar que un empleado estuviese forzado a presentar reclamaciones por cualquier dolor o síntoma leve.

Por último, en Maisonet v. F.S.E., *supra*, reconocimos el enfoque liberal que permea lo concerniente a las reclamaciones en casos de enfermedades ocupacionales. De hecho, este término de tres años que establece la Ley Núm. 45 es análogo a la regla prevaleciente en la mayoría de las jurisdicciones estatales de Estados Unidos, la cual se conoce como *discovery rule*.[16] Esa regla sostiene que el

---

[15] Maisonet v. F.S.E., 142 D.P.R. 194, 198 (1996).

[16] 3 Larson's Workmen's Compensation Law, Sec. 53.04 (2011).

periodo para reclamar comienza a transcurrir desde que el empleado u obrero descubre diligentemente la naturaleza de la enfermedad que lo incapacita.[17] Es decir, conforme a la regla y a la decisión de Maisonet v. F.S.E., *supra*, el **único término** para reclamar en la C.F.S.E. una enfermedad ocupacional es de tres años, contados a partir de que el obrero o empleado conoce la naturaleza y severidad de su enfermedad y que ésta puede guardar relación con su empleo. Esto, en vista de que, como concluimos, el término de doce meses que establece el inciso (i) del Art. 3, *supra*, es uno que se refiere al carácter compensatorio de una enfermedad ocupacional y no al término prescriptivo de la acción a reclamar.

**IV**

En el caso de autos, el Administrador de la C.F.S.E. y la Comisión Industrial predicaron su denegatoria en el caso de la señora Meléndez Villafañe en un supuesto término de caducidad de doce meses. Interpretaron que un obrero o empleado tiene un término de tres años "para radicar una reclamación en caso de enfermedades ocupacionales [...] siempre que no hayan transcurrido doce meses de la última exposición a riesgo". De esa forma, como la señora Meléndez Villafañe presentó su reclamación más de un año y medio después de su último día de empleo, la C.F.S.E. archivó su caso. La Comisión confirmó dicho archivo.

---

[17] 7 Larson´s Workmen's Compensation Law, Sec. 126.05 (2011).

No obstante y como hemos visto, tal interpretación se aparta de la letra clara de la ley, que sólo establece que las reclamaciones en casos de enfermedades ocupacionales deberán instarse dentro de un término de tres años a partir de la fecha en que el obrero conoce la naturaleza de la incapacidad y de su relación con el trabajo, o que pudo haberla adquirido mediante el ejercicio de razonable diligencia. Por ende, no existe, como interpretaron el Administrador de la C.F.S.E. y la Comisión Industrial, un término de caducidad de doce meses para iniciar una reclamación en los casos de enfermedades ocupacionales.

En el caso particular de la señora Meléndez Villafañe, las primeras manifestaciones se produjeron mientras ésta laboraba en el área de soldaduras de la compañía. Es decir, sus primeras manifestaciones se produjeron mientras estuvo expuesta al riesgo propio del empleo. Por consiguiente, no estamos ante unas manifestaciones que se produjeron luego de la última exposición al riesgo. Además, es importante señalar que lo anterior, tal y como reconoció el Administrador de la C.F.S.E., refleja claramente que la señora Meléndez Villafañe sufrió una enfermedad ocupacional.[18]

Ahora bien, el Tribunal de Apelaciones sostuvo, al tomar en cuenta el término de tres años, que la señora Meléndez Villafañe tampoco estableció su reclamación dentro de esos tres años a partir de la fecha en que adquirió o

---

[18] Apéndice del Recurso de Apelación, pág. 39.

pudo haber adquirido conocimiento de la naturaleza de la incapacidad y de su relación con el trabajo. Advirtió que la señora Meléndez Villafañe visitaba a su médico privado desde que comenzó a sufrir los síntomas de dolor y molestias en 1998 y que la acción de acudir con regularidad a las visitas médicas "debieron razonablemente haberle informado de la naturaleza de la condición médica y su relación con el trabajo". No obstante, a nuestro juicio no existe prueba en el expediente para determinar, como lo hizo el Tribunal de Apelaciones, que la señora Meléndez conoció la "naturaleza de su incapacidad" en 1998 cuando comenzó a padecer síntomas y a recibir tratamiento médico. Como ya explicamos, el término de tres años no comienza con las primeras manifestaciones de la enfermedad sino cuando el empleado conoce que su condición es incapacitante y que la misma está relacionada con el trabajo.

Ciertamente es un hecho incontrovertido que la señora Meléndez Villafañe comenzó a padecer dolor en el hombro izquierdo, el área del cuello, el brazo y se le adormecían las manos, desde 1998. Por tales padecimientos ésta recibió tratamiento médico privado, cada vez que sentía necesidad, por los próximos seis años. Durante esos seis años la peticionaria continuó trabajando sin solicitar los beneficios de la póliza que pagaba su patrono a la C.F.S.E. Sin embargo, según surge del expediente, luego que cesó de trabajar en el 2004 la peticionaria continuó con los síntomas y con el tratamiento médico privado, ignorando que

era posible recibir los beneficios de la C.F.S.E., aun cuando hubiera cesado de trabajar. Una vez su médico privado le advierte de la posibilidad real de que su condición surgiera a consecuencia de su trabajo, la peticionaria acude a los médicos de la C.F.S.E. quienes la evaluaron y diagnosticaron su condición. Así, pues, a partir de dicho diagnóstico médico la señora Meléndez Villafañe conoció la naturaleza y severidad de su enfermedad. De esa forma, el término para reclamar los beneficios ante la C.F.S.E. comenzó a transcurrir desde esa fecha.

Contrario a lo que sostuvo el Tribunal de Apelaciones, la fecha de inicio para reclamar no puede ser la fecha en que ocurrieron las primeras manifestaciones. Ello es contrario a la norma de Maisonet v. F.S.E., *supra*. El término para reclamar inicia desde que el empleado conoce que su condición es incapacitante porque se ha tornado severa y que la misma puede guardar relación con su empleo.

La señora Meléndez Villafañe presentó sus primeros síntomas en 1998, pero aún así ella continuó trabajando hasta el 2004. Por tal razón, no podemos utilizar el 1998 como la fecha en que inicia el periodo para reclamar. En el 2006 es que la señora Meléndez Villafañe adviene al conocimiento de que podía acudir a la C.F.S.E debido a que sus padecimientos guardaban relación con su trabajo anterior. Además, aún si concluyéramos que la señora

Meléndez Villafañe conoció la relación causal entre su enfermedad y el trabajo mucho antes de su despido, ello no produce, por sí solo, el inicio del término para reclamar. No es hasta que los médicos de la C.F.S.E. le diagnostican los traumas cervical, de manos y de hombro que la señora Meléndez Villafañe conoce que su enfermedad es ocupacional e incapacitante. Ella conoció la severidad de su enfermedad cuando acudió a la C.F.S.E., por tal razón, estaba en término para presentar su reclamación. Por lo tanto, erró la C.F.S.E. al cerrar el caso de la señora Meléndez Villafañe.

**V**

En armonía con lo antes señalado, se revoca la Sentencia del Tribunal de Apelaciones, Región Judicial de San Juan, y se devuelve el caso a la Corporación del Fondo del Seguro del Estado para ulteriores procedimientos compatibles con lo aquí resuelto.

Se dictará Sentencia de conformidad.

Erick V. Kolthoff Caraballo
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Carmen Meléndez Villafañe
    Peticionaria

        v.

Corporación del Fondo del
Seguro del Estado
    Recurrida                           AC-2009-94

Comisión Industrial de
Puerto Rico
    Agencia-Revisada

Thomas & Betts Corp.
    Patrono


                        SENTENCIA


        San Juan, Puerto Rico, a 21 de septiembre de 2011.

            Por los fundamentos expuestos en la Opinión
        que antecede, la cual se hace formar parte íntegra
        de la presente, se revoca la Sentencia del Tribunal
        de Apelaciones, Región Judicial de San Juan, y se
        devuelve el caso a la Corporación del Fondo del
        Seguro del Estado para ulteriores procedimientos
        compatibles con lo aquí resuelto.

            Así lo pronunció, manda el Tribunal y
        certifica la Secretaria del Tribunal Supremo. El
        Juez Asociado señor Rivera García no interviene.


                        Aida Ileana Oquendo Graulau
                        Secretaria del Tribunal Supremo