EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Ángel Gerardo Ortiz Jiménez, Norma Cintrón Torres y la Sociedad Legal de Bienes Gananciales compuesta por ambos<br><br>Peticionarios<br><br>v.<br><br>Lydia Esther Rivera Núñez, su esposo Fulano de Tal, la Sociedad Legal de Bienes Gananciales compuesta por ambos; Compañías de Seguros A y B; Sutano de Tal y Mengano de Tal<br><br>Recurridos<br><br>Sears, GR Contractors y Aurelio Villanueva<br><br>Terceros Demandados | Certiorari<br><br>2016 TSPR 50<br><br>195 DPR ____ |

Número del Caso: CC-2014-596

Fecha: 16 de marzo de 2016

Tribunal de Apelaciones:

      Región Judicial de Carolina Panel XII

Abogado de la parte Peticionario:

      Lcdo. José M. Náter

Abogados de la parte Recurrida:

      Lcdo. Juan R. Cobián
      Lcdo. Atzel L. Drevon

Materia: Daños y Perjuicios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Ángel Gerardo Ortiz Jiménez, Norma Cintrón Torres y la Sociedad Legal de Bienes Gananciales compuesta por ambos<br><br>Peticionarios<br><br>v.<br><br>Lydia Esther Rivera Núñez, su esposo Fulano de Tal, la Sociedad Legal de Bienes Gananciales compuesta por ambos; Compañías de Seguros A y B; Sutano de Tal y Mengano de Tal<br><br>Recurridos<br><br>Sears, GR Contractors y Aurelio Villanueva<br><br>Terceros Demandados | CC-2014-0596 |

Opinión del Tribunal emitida por el Juez Asociado señor MARTÍNEZ TORRES.

En San Juan, Puerto Rico, a 16 de marzo de 2016.

Nos corresponde determinar si la inmunidad patronal en virtud de la Ley de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1935, según enmendada, 11 LPRA sec. 1, et seq., (Ley Núm. 45) se extiende a una persona que contrata a otra para que le brinde un servicio, aun cuando ese servicio es subcontratado posteriormente en varias ocasiones. Por las razones que exponemos a continuación, resolvemos en la afirmativa.

I.

Este caso se origina con la compraventa de unos enseres electrodomésticos, entre estos, una lavadora y una secadora de ropa en la tienda por departamentos Sears Roebuck de Puerto Rico, Inc. (Sears). **Simultáneamente con la compra de los electrodomésticos, la Sra. Lydia Esther Rivera Núñez contrató con Sears el servicio de entrega de esos enseres.** Para llevar a cabo la gestión encargada, Sears subcontrató a G & R Contractors. Surge del expediente que Sears requirió la obtención de una póliza de seguro obrero-patronal de la Corporación del Fondo del Seguro del Estado (CFSE) a G & R Contractors. Posteriormente, para el descargo de la labor, G & R Contractors subcontrató al Sr. Aurelio Villanueva.

El 27 de mayo de 2011, el señor Villanueva fue junto al Sr. Ángel Gerardo Ortiz Jiménez a la casa de la recurrida para entregar los enseres electrodomésticos. El señor Villanueva contó con la asistencia del señor Ortiz Jiménez, pues tenía un contrato de servicios con el último para la realización de este tipo de labores.

En su residencia, que se encontraba en proceso de construcción, la señora Rivera Núñez les indicó que tanto la lavadora como la secadora de ropa correspondían al segundo piso de la propiedad. Sin embargo, no les informó que inmediatamente después de las escaleras para subir al segundo piso, existía un pasillo sin barandas por el cual

alguien podía caerse al primer piso. Para realizar la entrega de esos enseres, los señores Villanueva y Ortiz Jiménez transportaron la secadora de ropa en un carro de carga hasta el segundo piso a través de las escaleras. Una vez alcanzaron el segundo piso, el señor Ortiz Jiménez pisó en falso y cayó al primer piso desde una altura aproximada de doce pies. Además, le cayó encima la secadora y el carro de carga usado para transportarla.

Este lamentable suceso provocó que el señor Ortiz Jiménez tuviera que ser transportado en ambulancia para recibir atención médica. Consecuentemente, estuvo recluido en el Hospital Industrial durante una semana, pues, según alegó, sufrió una contusión en la espalda con fractura en la vértebra lumbar L-3, una herida en la cabeza con sangrado y lesiones en el hombro derecho, pierna izquierda, cadera izquierda y rodilla derecha. El señor Ortiz Jiménez recibió servicios médicos a través de la CFSE de forma continua hasta el 27 de febrero de 2012.

Por estos hechos, el señor Ortiz Jiménez, su esposa Norma Cintrón Torres y la Sociedad Legal de Gananciales compuesta por ambos (peticionarios), presentaron una demanda por daños y perjuicios en contra de la señora Rivera Núñez. En síntesis, alegaron que esta respondía por los daños sufridos como consecuencia del accidente, debido a que fue negligente al permitir la existencia de condiciones de extrema peligrosidad y no advertir de ellas

al señor Ortiz Jiménez. A su vez, la Sra. Rivera Núñez presentó una demanda contra terceros para traer al pleito a Sears, G & R Contractors y al señor Villanueva.

Sears presentó una moción de desestimación en la que planteó que era patrono estatutario del señor Ortiz Jiménez. Además, alegó que le requirió a G & R Contractors que obtuviera una póliza de seguro obrero-patronal de la CFSE. Por eso, Sears arguyó que estaba protegido por la inmunidad patronal que otorga la Ley Núm. 45, supra. Por su parte, la señora Rivera Núñez reclamó que procedía desestimar la demanda a su favor por los mismos fundamentos aducidos por Sears.

El Tribunal de Primera Instancia emitió una sentencia parcial en la que únicamente desestimó el pleito en contra de Sears por este ser patrono estatutario del señor Ortiz Jiménez.[1] Sin embargo, nada se dispuso en torno a la señora Rivera Núñez. Por lo tanto, esta presentó su propia moción de desestimación en la que alegó ser patrono estatutario del señor Ortiz Jiménez. No obstante, el foro primario determinó mediante una resolución que esta no era patrono estatutario al no existir un "vínculo jurídico" entre ella y el señor Villanueva, el patrono real o contractual del agraviado. La Sra. Rivera Núñez presentó una moción de

---

[1] La sentencia parcial solo hace referencia a Sears, es decir, no se adjudicó si G & R Contractors y el señor Villanueva también son patronos estatutarios del señor Ortiz Jiménez. Apéndice, págs. 99-105.

reconsideración que fue denegada. Inconforme, esta recurrió ante el Tribunal de Apelaciones.

El foro apelativo intermedio concluyó que la Sra. Rivera Núñez era patrono estatutario del señor Ortiz Jiménez, pues se encontraba en la misma cadena contractual de Sears, G & R Contractors y del señor Villanueva. En consecuencia, revocó la resolución del foro primario por entender que la Sra. Rivera Núñez era, al igual que Sears, un patrono protegido por la inmunidad que otorga la Ley Núm. 45, supra. Inconformes, los peticionarios recurrieron ante nos.

Expedido el auto de certiorari y con el beneficio de la comparecencia de las partes, procedemos a resolver.

II.

A. La Ley Núm. 45, supra, surgió como una medida de protección social para garantizar una compensación rápida al obrero que sufre un accidente en el curso de su empleo. Guzmán y otros v. E.L.A., 156 DPR 693, 727-728 (2002). Así, el derecho del empleado a recibir compensación de la CFSE surge independientemente de si medió o no negligencia por su parte o por la del patrono. Íd., pág. 729. Para lograr articular este sistema compensatorio, el Art. 17 de la Ley Núm. 45, 11 LPRA sec. 20, obliga a todo patrono a asegurar a sus propios empleados con la CFSE. Esa disposición no solo obliga al patrono a asegurar a sus propios empleados sino que le exige de forma subsidiaria

asegurar a los trabajadores de los patronos con quienes ajustó o contrató y los de un contratista o subcontratista independiente cuando estos no aseguren a sus propios empleados. A cambio de procurar cobertura para los empleados, el patrono asegurado, ya sea real o estatutario, goza de inmunidad absoluta contra demandas por daños y perjuicios, incluidas aquellas que surjan debido a su negligencia crasa. Hernández Sánchez v. Bermúdez & Longo, S.E., 149 DPR 543 (1999). En ese supuesto, no se trata de una defensa disponible para el *patrono* sino de la inexistencia de una causa de acción en daños y perjuicios en su contra dada la exclusividad del remedio provisto por la Ley Núm. 45, supra. López Cotto v. Western Auto, 171 DPR 185, 194 (2007). Además, "[e]l pago de ese seguro por el contratista, el subcontratista, el principal, o el dueño de la obra, inmuniza a todos los patronos contra acciones de daños por los empleados o por el Fondo". Vda. de Costas v. P.R. Olefins, 107 DPR 782, 785 (1978).

Nuestra jurisprudencia ha reconocido la coexistencia de la figura del patrono real y la figura del patrono estatutario. Ese reconocimiento se ha dado "dentro del contexto de un contrato o subcontrato de obra o de servicios, y sólo para aquellos dueños de obra, principales contratistas o subcontratistas que tuvieran -con relación al trabajador lesionado- la obligación legal común de asegurarlo con [la CFSE]". (Citas omitidas)

Santiago Hodge v. Parke Davis Co., 126 DPR 1, 11 (1990). Asimismo, hemos indicado que el término patrono estatutario incluye a los "dueños de obras y principales a quienes la ley impone la obligación de asegurar a los empleados de los contratistas o subcontratistas que aquéllos contraten para la ejecución de obras y servicios, cuando éstos no los tengan asegurados". (Énfasis suprimido) Martínez Rodríguez v. Bristol Myers, Inc., 147 DPR 383, 396 (1999). En aras de implementar el objetivo de proteger a los empleados que trabajen en la realización de determinada obra o en la prestación de un servicio, no se ha impuesto un límite a los grados que puede descender verticalmente la obligación legal de asegurar con la CFSE.

La importancia de ambas figuras resalta cuando, dentro de la realización de una misma obra o servicio en particular, existen múltiples *patronos* a lo largo de la misma cadena contractual. En ausencia de un nexo jurídico obrero-patronal que relacione al patrono real del obrero con el que invoca la inmunidad patronal, estaremos ante un tercero desprovisto de la protección estatutaria. Torres Solís v. A.E.E., 136 DPR 302, 310 (1994). Por lo tanto, determinar si un demandado es un patrono estatutario es una conclusión mixta de hecho y de derecho que dependerá fundamentalmente de las relaciones contractuales **entre este y el patrono real de los empleados.** Íd.; véase, además, Lugo Sánchez v. A.F.F., 105 DPR 861, 865-866 (1977).

En ese sentido, en Santiago Hodge v. Parke Davis Co., supra, reconocimos por primera vez que la Ley Núm. 45, supra, contiene lo que se conoce como "la cláusula de contratista" (contractor-under) en su Art. 17, 11 LPRA sec. 20. Esa disposición es la que impone a los patronos – dueños de obras, principales, contratistas o subcontratistas- la responsabilidad subsidiaria de asegurar a los obreros de aquellos con los que contraten o ajusten. De esa forma, la Ley Núm. 45, supra, impide que con el fin de abaratar costos, patronos inescrupulosos se autoeximan de su obligación legal de asegurar mediante la subcontratación de labores y de esa forma, no tener empleados directos. Santiago Hodge v. Parke Davis Co., supra, pág. 10. Ausente ese tipo de cláusula en el estatuto ante nuestra consideración, el "patrono principal" no tendría el deber de asegurar a los empleados de aquellos con quienes ajuste, toda vez que su obligación legal de asegurar se limitaría únicamente a sus empleados directos. Tampoco podría beneficiarse del pago del seguro de la CFSE por alguno de los patronos en la cadena contractual. Vda. de Costas v. P.R. Olefins, supra, pág. 785. Otra consecuencia práctica de la cláusula de contratista es que protege a los empleados de los contratistas o subcontratistas no asegurados, ya que en ese escenario se activa la obligación subsidiaria que tienen los patronos al tope de la cadena contractual de asegurar esos obreros con la CFSE.

El Profesor Larson nos explica la razón de ser de ese tipo de cláusula: "The purpose of this legislation [is] to protect employees of irresponsible and uninsured subcontractors by imposing ultimate liability on the presumably responsible principal contractor, which has it within its power, in choosing subcontractors, to pass upon their responsibility and insist upon appropriate compensation protection for their workers." Arthur Larson y otros, Larson's Workers' Compensation Law, New York, Matthew Bender, Vol. 6, sec. 70.04, pág. 70-6 (2007).[2] Por lo tanto, para que la cláusula de contratista no se torne en letra muerta, es necesario prescindir de un análisis que involucre los grados contractuales que ha descendido la obligación pactada originalmente, es decir, las veces que ha sido subcontratado el **mismo** contrato de obra o

---

[2] En jurisdicciones estadounidenses, este esquema permite al empleado lesionado ascender en la cadena contractual hasta el primer patrono asegurado para beneficiarse de la compensación del seguro obrero-patronal. Arthur Larson y otros, op. cit., Vol. 6, sec. 70.04, pág. 70-6. ("[I]n the increasingly common situation displaying a hierarchy of principal contractors upon subcontractors upon sub-subcontractors, if an employee of the lowest subcontractor on the totem pole is injured, there is no practical reason for reaching up the hierarchy any further than the first insured contractor."). Algunas jurisdicciones han establecido fondos para remediar la situación en la que ningún patrono a lo largo de la cadena contractual aseguró a sus empleados. Thayer v. Uninsured Employers' Fund, 991 P.2d 447, 450 (Mont. 1999); Yocom v. Campbell, 536 S.W.2d 470 (Ky. 1976). En términos de nuestra Ley Núm. 45, supra, si ningún patrono está asegurado con la CFSE, se activará el mecanismo del Art. 13, 11 LPRA sec. 16, que permite al empleado u obrero lesionado de un patrono no asegurado solicitar compensación ante la Comisión Industrial y además, de forma independiente, demandar a su patrono en daños y perjuicios. Véase Vélez Sánchez v. Comisión Industrial de Puerto Rico, etc., 107 DPR 797 (1978).

servicios. En su lugar, ese tipo de cláusula obliga a centrar la atención en determinar si existe una relación obrero-patronal y si el accidente laboral ocurrió como resultado del empleo que motiva la relación. Por eso es que el pago del seguro obrero-patronal de la CFSE por alguno de los patronos a lo largo de la misma cadena contractual beneficia a cualquiera de ellos. Vda. de Costas v. P.R. Olefins, supra, pág. 785. Como en el pasado, en este caso conviene auscultar lo que han resuelto otras jurisdicciones estatales. Véanse, e.g., Meléndez Villafañe v. C.F.S.E., 182 DPR 918, 927 (2011); Santiago Hodge v. Parke Davis Co., supra, pág. 10.

B. En algunas jurisdicciones estatales la inmunidad patronal provista por un estatuto de compensaciones análogo al nuestro no se le extiende al dueño de una propiedad que contrata la realización de una obra o la prestación de un servicio. En esos ordenamientos, solo los patronos de los obreros están obligados a proveerles compensación por accidentes laborales a través de un seguro obrero-patronal. Véanse Ramos v. Univision Holdings, Inc., 655 So.2d 89, 90 (Fla. 1995); Yoho v. Ringier of Am., Inc., 434 S.E.2d 57, 59 (Ga. 1993). Así, al igual que en nuestra jurisdicción, la obligación de asegurar es la que proporciona la inmunidad patronal.

Asimismo, en otras jurisdicciones el dueño de una propiedad que contrató a un contratista independiente es

inmune contra demandas de los obreros del último, pues estos ya reciben compensación por un accidente laboral. Véanse Richards v. Republic Silver State Disposal, 148 P.3d 684, 690-692 (Nev. 2006); Privette v. Superior Court, 854 P.2d 721, 728-729 (Cal. 1993). En esa línea, también se le extiende la inmunidad al dueño o principal frente a demandas de los empleados de los contratistas independientes por actos atribuibles al principal. Sin embargo, esa inmunidad depende de que el principal no haya incurrido en actos de negligencia afirmativa, una figura ajena a nuestro ordenamiento. También, otro escenario que desvanece la inmunidad del principal ocurre cuando las lesiones del obrero surgen de actividades inherentemente peligrosas. Véanse Tatera v. FMC Corp., 786 N.W.2d 810, 818-821 (Wis. 2010); Hooker v. Department of Transportation, 38 P.3d 1081, 1091 (Cal. 2002). Esto se debe a que el dueño o principal, a pesar de haber ajustado con un agente o contratista independiente, retiene cierto control sobre la obra o servicio.

Existen diversas razones para las normas en las jurisdicciones que le otorgan algún grado de inmunidad a los dueños o principales que ajustan alguna obra o servicio. Entre esas justificaciones, notamos el hecho de que el principal ya ha asumido el costo de la póliza obrero-patronal en el precio de la labor pactada con el contratista independiente. Richards v. Republic Silver State Disposal, supra, pág. 690. Además, resalta el deseo

de no hacer al principal más responsable que el contratista independiente frente a su empleado, pues no podría beneficiarse de la exclusividad del remedio provisto por un seguro obrero-patronal. Tatera v. FMC Corp., supra, págs. 818-819. Por último, subyace que no otorgar algún grado de inmunidad resultaría en un incentivo para que los dueños y principales no contraten labores con terceros, sino que las lleven a cabo a través de sus propios empleados, pues así, serían inmunes a sus demandas.

En esas jurisdicciones los grados contractuales en los que se ha extendido la inmunidad patronal se han ampliado hasta cobijar al contratista al tope de la cadena contractual. Incluso, ante la presencia de reclamaciones de empleados de sub-subcontratistas que ajustaron con subcontratistas la realización de una misma obra o servicio. Brogno v. W & J Associates, Ltd., 698 A.2d 191, 195 (R.I. 1997); Crowe v. Brasfield & Gorrie Gen. Contractor, Inc., 688 So. 2d 752, 757 (Miss. 1996). Esto ocurre porque lo que persigue la cláusula del contratista es mantener al empleado asegurado con un seguro obrero-patronal, independientemente de qué *patrono* lo pague. De hecho, si la cláusula de contratista permite que un empleado u obrero ascienda en la cadena contractual hasta conseguir cobertura, resulta entonces lógico que se permita a esos mismos patronos, vinculados jurídicamente por la misma obligación contractual, gozar de la inmunidad

patronal, pues existe un seguro análogo al de la CFSE. Arthur Larson y otros, op. cit., Vol. 6, sec. 70.04, pág. 70-6.

Como vimos, la cláusula de contratista busca garantizar compensación al empleado u obrero. Esto aplica independientemente de los grados contractuales en los cuales se puedan encontrar el presunto patrono y el empleado u obrero lesionado. Brogno v. W & J Associates, Ltd., supra, págs. 194-195. Lo fundamental es que exista un vínculo principal y agente entre los que asumen el rol de 'patrono' y 'empleado', y que el accidente haya ocurrido como consecuencia de esa relación laboral. Crowe v. Brasfield & Gorrie Gen. Contractor, Inc., supra, pág. 757 (citando a Morris v. W.E. Blain & Sons, Inc., So.2d 945, 949 (Miss. 1987)).

Las jurisdicciones estatales que revisamos llegaron a sus respectivas conclusiones mediante la interpretación de sus estatutos obrero-patronales de acuerdo a sus tradiciones jurídicas y nociones de política pública. En ese sentido, hemos hecho lo propio e interpretado que en nuestro ordenamiento los contratistas o subcontratistas tienen la obligación legal directa de asegurar a sus empleados, mientras que los dueños de obra o principales están obligados subsidiariamente por la Ley Núm. 45, supra. Martínez Rodríguez v. Bristol Myers, Inc., supra, pág. 396. Por eso, en nuestra jurisdicción, un dueño de

obra o principal es inmune contra demandas de empleados si algún patrono los aseguró con la CFSE. Torres Solís v. A.E.E., supra, pág. 309. Indudablemente, la interpretación adoptada previamente por este Tribunal permite que nuestra Ley Núm. 45, supra, y su cláusula de contratista, comprendan escenarios excluidos en otras jurisdicciones estadounidenses. Cf. Thorsheim v. State, 469 P.2d 383, 387 (Alaska 1970) ("The 'contractor-under' statutes adopted in the various states differ greatly in their language and in the scope of their coverage.").

C. En el pasado, tuvimos ante nuestra consideración casos en los que fue necesario determinar la aplicabilidad de la doctrina del patrono estatutario. Ahora bien, debido a que no encontramos la existencia de un contrato de obra o de servicios, o un vínculo obrero-patronal entre el presunto patrono y empleado, declinamos aplicar la referida doctrina.

En Atiles Moréu, Admor. v. Comisión Industrial, 67 DPR 503 (1947), negamos extender la póliza de la CFSE pagada por una de las partes de un contrato de compraventa, al obrero que murió en el desempeño de labores que nacían necesariamente de ese contrato. En ese caso, el Sr. Juan de los Santos Monge era el dueño de un camión y tenía unos empleados que no estaban asegurados con la CFSE. Así las cosas, pactó una compraventa de tierra con el dueño de un cementerio, el Sr. Ramón Fournier, quien sí estaba

asegurado con la CFSE. Como parte de las condiciones de esa compraventa, el dueño del cementerio pagaría por cada camión que descargara tierra en su cementerio. Así, la entrega de la tierra en el cementerio era una condición del contrato de compraventa y no un contrato de servicios independiente.

Sin embargo, cuando los empleados del señor De los Santos Monge, el patrono real, recogían tierra para entregarla posteriormente al dueño del cementerio, ocurrió un derrumbe que le costó la vida a uno de ellos. Bajo esos hechos particulares, concluimos que la póliza obrero-patronal del dueño del cementerio no respondía toda vez que lo único que existía entre este y el patrono real del empleado fallecido era un contrato de compraventa. **"No había en forma alguna un contrato de arrendamiento de servicios de parte de De los Santos Monge[,] [patrono real del empleado fallecido,] en favor de Fournier**. Meramente había uno o varios contratos de compraventa". (Énfasis suplido) Íd., pág. 507.

Siguiendo la misma línea, en Ruíz Díaz v. Vargas Reyes, 109 DPR 761 (1980), declinamos extender la inmunidad patronal que concede la Ley Núm. 45, supra, a quien no tiene una relación de *patrono* con el obrero lesionado. En ese caso, el demandante era un carpintero empleado de la contratista Bird Construction, Co., quien a su vez, había subcontratado a la concretera Ready Mix

Concrete (Ready Mix) para la entrega de cemento premezclado en la construcción de un condominio. El demandante, en el curso de sus labores, las cuales eran separadas e independientes a las de la concretera, fue arrollado por un camión de Ready Mix. Por esos hechos, y luego de haber recibido compensación de la CFSE, se presentó una demanda por daños y perjuicios en contra de Ready Mix, en la que se alegó negligencia del chofer que condujo el camión propiedad de la concretera.

En aquella ocasión, la relación principal y agente del demandante era exclusivamente con la contratista Bird Construction, Co. Más aun, la concretera Ready Mix había sido subcontratada por Bird Construction, Co., únicamente para la entrega de cemento premezclado y su labor no tenía injerencia en la relación obrero-patronal entre el demandante y Bird Construction, Co. Al resolver la controversia presentada, resaltamos que el factor determinante en la concesión de la inmunidad estatutaria es la existencia de un vínculo, directo o indirecto, entre el empleado accidentado y el patrono en el curso de cuyo empleo ocurre el accidente. Ruíz Díaz v. Vargas Reyes, supra, pág. 765. Como no encontramos una relación obrero-patronal entre Ready Mix y el demandante, rechazamos la invitación de la concretera de extenderle la inmunidad de patrono estatutario frente al demandante. **En otras palabras, declinamos incluir dentro del grupo inmune al colectivo de contratistas y subcontratistas por el mero**

**hecho de estos tener alguna participación en la realización de una obra si no existe un vínculo obrero-patronal, directo o indirecto, entre el empleado accidentado y el *patrono*.** De esa forma, rechazamos incorporar en nuestro ordenamiento la doctrina de inmunidad de comunidad familiar (*common family immunity doctrine*). Ruíz Díaz v. Vargas Reyes, supra, pág. 765; Cf. Crowe v. Brasfield & Gorrie Gen. Contractor, Inc., supra, pág. 757.

En resumidas cuentas, un dueño de obra o principal que ajuste con un contratista independiente gozará de la inmunidad absoluta provista por la Ley Núm. 45, supra, si cumple con su obligación subsidiaria de asegurar a los empleados del patrono real. Martínez Rodríguez v. Bristol Myers, Inc., supra, pág. 397. También será inmune si el patrono con quien contrató para la realización de determinada obra o servicios ha asegurado a sus propios trabajadores. Íd. Asimismo, luego de un análisis de nuestro ordenamiento jurídico y de la jurisprudencia persuasiva de otros tribunales estatales, concluimos que ese deber patronal de asegurar con la CFSE se extiende hasta los empleados en el último lugar de una misma cadena contractual, sin importar cuan extensa sea. Así, todos los *patronos* obligados a asegurar se beneficiarán de la inmunidad contra demandas que otorga la Ley Núm. 45, supra. Lo determinante en la aplicación de esa inmunidad estatutaria es que la relación entre principal y agente en

un contrato de obra o de servicios permite que exista un vínculo obrero-patronal indirecto entre el principal y el obrero accidentado.

Debemos recordar que en Montaner, Admor. v. Comisión Industrial, 59 DPR 285 (1941), reconocimos, precisamente, la existencia de este tipo de relación:

> Las leyes de compensaciones a obreros han creado una relación completamente nueva entre principales o contratistas principales y los empleados de contratistas y subcontratistas. Hasta ahora, bajo estas circunstancias, se había sostenido que aquellos que ostensiblemente aparecían como principales o contratistas principales en relación con contratistas y subcontratistas eran en realidad patronos de trabajadores empleados ostensiblemente por contratistas y subcontratistas. En esos casos se resolvió que la relación de principal y agente (master and servant) existía claramente entre el principal o principal contratista y los obreros o empleados directamente nombrados por los contratistas o subcontratistas. Íd., pág. 290 (citando a William Bradbury, Bradbury's Workmen's Compensation, The Branks law Publishing Co., Baker, Voorhis & Co., (3ra ed. 1917), pág. 264).

Como vimos, el objetivo primordial de la Ley Núm. 45, supra, es proveer una compensación rápida y segura para todos los trabajadores. Ese propósito se alcanza cuando alguno de los patronos asegura a todos los empleados, directos o indirectos, con la CFSE. Por esa razón, no podemos condicionar la existencia de la inmunidad que provee la Ley Núm. 45, supra, a que un dueño de obra o principal también asegure a los empleados con la CFSE cuando ya otro patrono, real o estatutario, aseguró a esos mismos empleados. En ese escenario, ya se alcanzó la

política pública y esos empleados tienen disponibles los remedios que provee esa agencia en toda su extensión. Lugo Sánchez v. A.F.F., supra, pág. 867. Del mismo modo, no podemos obviar el hecho de que el costo de la póliza obrero-patronal de la CFSE es, eventualmente, un componente del precio de la obra o servicio que se pacta. En fin, resolver lo contrario y determinar que un dueño de obra o principal necesita adquirir una póliza obrero-patronal independiente con la CFSE para, en un caso como este, ser inmune a las demandas de cualesquiera empleados de sus agentes o contratistas independientes solo impondría una carga adicional sobre el comercio y el tráfico jurídico que no es necesaria para ofrecer cubierta a los trabajadores.

## III.

En este caso se cumplió cabalmente con el propósito de la Ley Núm. 45, supra. El señor Ortiz Jiménez estuvo cubierto por la CFSE y recibió sus servicios por más de un año. No se cuestionó la determinación del foro primario que determinó que Sears, la empresa contratada originalmente por la principal para el servicio de entrega de mercancía, era patrono estatutario del señor Ortiz Jiménez, el empleado agraviado.

En ese sentido, debemos recordar que la Sra. Rivera Núñez contrató a Sears para que esa compañía le entregara los enseres electrodomésticos que había adquirido.

Posteriormente, Sears subcontrató la realización del servicio de entrega con otra empresa, G & R Contractors. A su vez, esa otra entidad subcontrató la realización del **mismo** servicio de entrega con el señor Villanueva, el patrono real del empleado agraviado. Así, vemos que subsiste una relación obrero-patronal entre el señor Ortiz Jiménez y su patrono real que vincula a la señora Rivera Núñez como principal. Ese vínculo surge de la cadena contractual que comenzó con la contratación de Sears y culminó con la subcontratación del señor Villanueva para la realización del mismo servicio de entrega de los enseres electrodomésticos. Además, fue precisamente en el cumplimiento del servicio de entrega de los enseres electrodomésticos que ocurrió el lamentable accidente que suscitó la controversia.

En este caso, concurren las circunstancias que permiten la aplicación de la inmunidad estatutaria que provee la Ley Núm. 45, supra. Es decir, existe un vínculo obrero-patronal entre la señora Rivera Núñez y el señor Ortiz Jiménez producto de la relación principal y agente en el contexto de un contrato de servicios. Por eso, es inescapable concluir que la persona que comisionó en su origen el servicio de entrega de mercancía, la Sra. Rivera Núñez, es, al igual que Sears, un patrono estatutario inmune.

IV.

Por los fundamentos antes expuestos, se confirma la sentencia del Tribunal de Apelaciones. Se dictará Sentencia para devolver el caso al Tribunal de Primera Instancia, Sala Superior de Río Grande y que continúen allí los procedimientos a tenor con lo aquí expuesto.


RAFAEL L. MARTÍNEZ TORRES
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Ángel Gerardo Ortiz Jiménez, Norma Cintrón Torres y la Sociedad Legal de Bienes Gananciales compuesta por ambos<br><br>Peticionarios<br><br>v.<br><br>Lydia Esther Rivera Núñez, su esposo Fulano de Tal, la Sociedad Legal de Bienes Gananciales compuesta por ambos; Compañías de Seguros A y B; Sutano de Tal y Mengano de Tal<br><br>Recurridos<br><br>Sears, GR Contractors y Aurelio Villanueva<br><br>Terceros Demandados | CC-2014-0596 |

SENTENCIA

En San Juan, Puerto Rico, a 16 de marzo de 2016.

Por los fundamentos antes expuestos, en la Opinión que antecede, la cual se hace formar parte integrante de la presente Sentencia, se confirma la sentencia del Tribunal de Apelaciones. Se dictará Sentencia para devolver el caso al Tribunal de Primera Instancia, Sala Superior de Río Grande y que continúen allí los procedimientos a tenor con lo aquí expuesto.

Lo acordó el Tribunal y lo certifica el Secretario del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez disiente sin opinión escrita. El Juez Asociado señor Kolthoff Caraballo no intervino.

Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo