ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| MELANY GUZMÁN CLASS y JOSHUA SEPÚLVEDA GUZMÁN<br><br>Apelados<br><br>CORPORACIÓN DEL FONDO DEL SEGURO DEL ESTADO<br><br>Demandante en Subrogación-Apelada<br><br>v.<br><br>BLUE WATERS CHARTERS, LLC; VIEQUES AIR LINK, INC.; STARR INDEMNITY & LIABILITY COMPANY; DEMANDADOS A, B y C; COMPAÑÍAS ASEGURADORAS X, Y y Z<br><br>Apelantes | KLAN202300764 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Civil Núm.: SJ2021CV04094<br><br>Sobre: Daños y Perjuicios - Subrogación |

Panel integrado por su presidenta, la Jueza Domínguez Irizarry[1], la Jueza Rivera Marchand y el Juez Rodríguez Flores

Rivera Marchand, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 31 de enero de 2024.

Comparecen Blue Waters Air Charters, LLC (Blue Waters), Vieques Air Link, Inc. (VAL) y Starr Indemnity & Liability Company (Starr) (conjuntamente, los apelantes). Solicitan que revoquemos en parte una *Sentencia Parcial* sumaria, que el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI o foro primario) notificó el 16 de junio de 2023.[2] En esta, el TPI desestimó -por la vía sumaria- la causa de acción sobre daños y perjuicios que instaron Melany Guzmán Class y Joshua Sepúlveda Guzmán (demandantes y apelados) en contra de Blue Waters y determinó que existen

---

[1] Mediante Orden Administrativa Núm: OATA-2023-176, se designa a la Jueza Domínguez Irizarry para entender y votar en el caso de epígrafe, debido a la inhibición de la Jueza Cintrón Cintrón.
[2] Apéndice, págs. 705-722.

Número Identificador

SEN2024_____

controversias de hechos medulares que impiden la adjudicación de la totalidad del pleito instado en contra de los demás codemandados.

Por los fundamentos que exponemos a continuación, confirmamos el dictamen apelado.

**I.**

Los demandantes incoaron el pleito de epígrafe en contra de los apelantes por los daños y perjuicios sufridos como consecuencia del accidente de aviación que ocurrió el 2 de junio de 2020.[3] En este trágico suceso se estrelló el Piper Azteca N14181 y falleció a sus 24 años de edad, Samuel Galarza Guzmán, hijo de Melany Guzmán Class y hermano de Joshua Sepúlveda Guzmán.

De las alegaciones de la demanda surge que, Samuel Galarza Guzmán laboraba como técnico de "avionics electronics" en Propilot, Inc. (Propilot), compañía que provee servicios conocidos como "avionics" que consisten en la reparación de aviones y otros, con sede en el Aeropuerto de Isla Grande. Propilot acordó con Blue Waters proveer servicios al avión Piper Azteca N14181 el 5 de febrero de 2020. El día de los hechos, Samuel Galarza Guzmán y Raymond Chaparro, empleados de Propilot, realizaron trabajos de "avionics" en el referido avión. Como parte de los servicios y labores a efectuarse, se requirió un vuelo de prueba. Con ese propósito, Blue Waters contrató a VAL para que Luis Torres Gavino fungiera de piloto.

En la demanda alegaron que, sin realizar un vuelo de seguridad previo, los empleados de Propilot abordaron el avión para el vuelo de prueba. Según lo expuesto, el avión tuvo dificultades en el primer intento para despegar, y luego de verificar una goma, los empleados volvieron a abordar el avión. Arguyeron además que, en el segundo intento, el avión giró nuevamente y, presuntamente, el motor izquierdo falló. La nave del Piper Azteca N14181 se inclinó

---

[3] Apéndice, págs. 1-12.

hacia arriba, el avión perdió propulsión y el piloto perdió el control de la nave. Al estar debajo de la velocidad mínima ("below Vmc"), el avión se invirtió hacia la izquierda estrellándose en las inmediaciones de la Bahía de San Juan. Samuel Galarza Guzmán y Luis Torres Gavino fallecieron en el acto. Raymond Chaparro, sobrevivió el accidente.

Basado en lo antes, la madre y el hermano de Samuel Galarza Guzmán suplicaron el resarcimiento por los daños y perjuicios sufridos y continuos, por culpa y negligencia de los demandados. En particular, expusieron haber sufrido angustias mentales, pérdida de ingresos, más pérdidas generales de disfrute y calidad de vida. Por todo lo antes, solicitaron que se dictara sentencia a su favor condenando a los demandados al pago de $3,000,000.00 de forma solidaria, más una suma por gastos, costas y honorarios de abogado.

Como segunda causa de acción, los demandantes incluyeron a la Corporación del Fondo del Seguro del Estado (CFSE) en subrogación. La CFSE expuso que, Samuel Galarza Guzmán se encontraba laborando al momento del accidente producto de lo cual se presentó una reclamación ante sí. El administrador de la CFSE emitió una decisión final en la cual reconoció a la madre, Melany Guzmán Class, como única beneficiaria de su hijo. A esos efectos, la agencia solicitó el reembolso de $113,729.63 por concepto de la compensación otorgada a la beneficiaria del obrero fallecido.

Blue Waters y la aseguradora, Starr, solicitaron la desestimación del pleito. Expusieron que la encomienda de trabajo fue comisionada por VAL, por conducto de Blue Waters a Propilot. Informaron que VAL y Blue Waters son compañías afiliadas y VAL tenía una póliza de seguros para empleados abordo de aeronaves, por lo que, a su entender, existía un vínculo obrero-patronal entre Samuel Galarza Guzmán y VAL, producto de la relación entre el

principal y el agente en el contrato de servicios. Añadieron que, tanto VAL como Blue Waters son patronos estatutarios y están cobijados bajo la inmunidad patronal de la Ley del Sistema de Compensación por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1935, según enmendada, 11 LPRA sec. 1, *et seq.* (Ley 45). A su entender, la póliza del seguro obrero-patronal bajo la CFSE cobija o beneficia a lo largo de la cadena contractual, por lo que, ello priva de jurisdicción al TPI para entender sobre la causa de acción instada.

En respuesta, los demandantes se opusieron a la moción dispositiva.[4] Evaluado lo anterior, el TPI denegó el petitorio desestimatorio[5] y, en cumplimiento con la orden emitida, Blue Waters, VAL y Starr acreditaron su alegación responsiva.[6]

Así las cosas, y luego de múltiples incidencias procesales que no es necesario particularizar,[7] el 19 de enero de 2023, Blue Waters, VAL y Starr instaron una solicitud de sentencia sumaria.[8] En esta, propusieron 25 hechos incontrovertidos y acompañaron múltiples documentos[9] para fundamentar la desestimación del pleito en su

---

[4] Apéndice, págs. 21-73.

[5] Apéndice, págs. 92-93.

[6] Apéndice, págs. 94-119.

[7] Cabe señalar que se instó una demanda enmendada el 10 de agosto de 2021 con el fin de eliminar referencias al Sr. Ruiz Rodríguez. Apéndice, pág. 74-85. El 16 de agosto de 2021, el TPI ordenó la consolidación del caso de epígrafe (SJ2021CV03338) con el caso SJ2021CV04094. Apéndice, pág. 91. Los demandados acreditaron su alegación responsiva a la demanda enmendada. Apéndice, págs. 120-141. En particular, afirmaron que Raymond Chaparro no es parte en el pleito y luego constaba en la demanda enmendada. El 6 de junio de 2022, el TPI emitió una *Sentencia de Paralización* porque el co-demandante, Sr. Chaparro Lorenzo no había sido dado de alta de la CFSE y es cuando el TPI ordenó la desconsolidación del caso SJ2021CV03338 con el caso SJ2021CV04094 Apéndice, pág. 169.

[8] Apéndice, págs. 172-449.

[9] Junto a su petitorio incluyeron los siguientes documentos: Anejo 1- Certificado de Incorporación de VAL; Anejo 2-Certificado de Incorporación de Blue Waters; Anejo 3-Contrato de empleo de Luis Torres Gavino; Anejo 4- Contestaciones y Objeciones a Primer Pliego de Interrogatorio y Solicitud de Producción de Documentos de Blue Waters; Anejo 5- U.S. Department of Transportation Federal Aviation Administration Airman Details Report; Anejo 6-Resumé de Luis Torres Gavino; Anejo 7-Declaración jurada de Raymond Chaparro ante la CFSE; Anejo 8-Toma de deposición de José Nieves Irizarry; Anejo 9-Aircraft Lease Agreement para el arrendamiento de la aeronave Britten-Norman Islander N907VL; Anejo 10-Aircraft Lease Agreement para el arrendamiento de la aeronave Britten-Norman Islander N908VL; Anejo 11-Carta Acuerdo entre VAL y Blue Waters; Anejo 12-Carta emitida por Carlos M. Rodríguez; Anejo 13-Acuerdo de Gravamen Mobiliario; Anejo 14-Shop Order SO-00847; Anejo 15-Cheque número 0352 por la suma de $43,049.59; Anejo 16-Recibo de pago; Anejo 17-Informe patronal sometido por Propilot; Anejo 18-Decisión del Administrador Sobre Muerte-Dependencia expedido por la CFSE; y Anejo 19-Certificación de vigencia expedida por la CFSE.

totalidad. En apretada síntesis sostuvieron que, ante la cadena contractual existente aplica la doctrina de un solo patrono la cual favorece la inmunidad patronal de los demandados en este caso.

Coetáneo a ello, los demandados presentaron otra *Solicitud de Sentencia Sumaria Parcial en la Alternativa de no Concederse la Solicitud Dispositiva Radicada en esta Misma Fecha (SUMAC 81).*[10] En esta insistieron que, el TPI desestime la reclamación sobre daños en la cual se alega que la demandante Guzmán Class heredó la causa de acción por los sufrimientos de su hijo fallecido, como resultado del accidente hasta su muerte. Ello por entender que, la demandante no cuenta con evidencia para sustentar dicha causa de acción. En este petitorio, los demandados propusieron siete hechos incontrovertidos para fundamentar su postura.[11]

En reacción, la parte demandante presentó su oposición a la moción de sentencia sumaria y moción de sentencia sumaria parcial.[12]  En esta, admitieron las propuestas de hecho de los demandados números 1, 2, 14, 16, 17, 18, 22, 23, 24 y 25.  Sin embargo, objetaron los números 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 15, 19, 20 y 21, respectivamente. En cuanto a la solicitud de sentencia sumaria parcial, admitieron las propuestas número 1 (en parte), 3, 5, y 6.  De otra parte, negaron los hechos propuestos números 2, 4 y 7.  A su vez, propusieron quince hechos materiales adicionales que, a su entender, no están en controversia.[13]

---

[10] Apéndice págs. 450- 461.
[11] Junto a su petitorio incluyeron los siguientes documentos: Anejo 1, Toma de la deposición del Sr. Raymond Chaparro Lorenzo y Anejo 2, Decisión del Administrador sobre muerte-dependencia emitida por la Corporación del Fondo del Seguro del Estado. Cabe señalar que surge del *Informe preliminar entre abogados* presentado el 2 de febrero de 2023 que las partes presentaron 18 estipulaciones de hechos. Apéndice, págs. 489-491.
[12] Apéndice, págs. 548-626. En su oposición incluyeron los siguientes documentos: Exhibit 1-Declaración jurada suscrita por Luis Alberto Irizarry Porrata; Exhibit 2-Transcripción de la deposición de Carlos M. Rodríguez Colón; Exhibit 3-Informe patronal; Exhibit 4-Shop Order SO-00347; Exhibit 5-Cheque emitido por la cantidad de $18,561.11; Exhibit 6-Cheque emitido por la cantidad de $43,049.59; Exhibit 7-Toma de deposición de Raymond Chaparro Lorenzo; Exhibit 8-Resolución de Declaratoria de Herederos de Samuel Junior Galarza Guzmán; Exhibit 9-Informe médico forense de Samuel Junior Galarza Guzmán; Exhibit 10-Artículo "The experience of drowning".
[13] Apéndice, págs. 554-556.

Ahora bien, basado en lo anterior, al concluir su oposición, los demandantes se allanaron a que el TPI dicte sentencia sumaria parcial desestimando la demanda en cuanto a la codemandada, Blue Waters, no así, en cuanto a los demás demandados.[14] Con relación a la *Moción de sentencia sumaria parcial,*[15] los demandantes se opusieron por entender que lo argumentado es de naturaleza especulativa y destacaron los hallazgos del informe forense, entre otros asuntos.[16] A lo antes, se unió la CFSE mediante moción de 23 de marzo de 2023.[17]

Con el beneficio de la réplica de los demandados[18] y las dúplicas de la demandante[19] y de la CFSE,[20] el TPI emitió la *Sentencia Parcial* recurrida el 16 de junio de 2023. En esta, desestimó la demanda en contra de Blue Waters, no así en contra de VAL, y su aseguradora, Starr. Allí también, consignó los siguientes hechos incontrovertibles:

1. La demandante Melany Guzmán Class (Guzmán Class) es la madre de Samuel Galarza Guzmán quien falleció el 2 de junio de 2020.
2. El demandante Joshua Sepúlveda Guzmán (Sepúlveda Guzmán) es hermano por parte de madre de Samuel Galarza Guzmán.
3. Vieques Air Link, Inc. (VAL) es una corporación doméstica con fines de lucro, organizada y existente conforme a las leyes del Estado Libre Asociado de Puerto Rico, con oficinas principales en San Juan, Puerto Rico.
4. VAL se dedica a la operación de una línea aérea de pasajeros, según surge de su Certificado de Incorporación.
5. Para el 2 de junio de 2020, VAL era patrono del piloto Luis Torres Gavino, quien se desempeñaba como Director de Operaciones.
6. Blue Waters Charters, LLC (Blue Waters) es una compañía de responsabilidad limitada con fines de lucro, organizada y existente conforme a las leyes del Estado Libre Asociado de Puerto Rico, con oficinas principales en San Juan, Puerto Rico.
7. Blue Waters es una corporación cuyo propósito estriba en poseer título de dueño, arrendar, utilizar y/o administrar

---

[14] Apéndice pág. 568.
[15] Entrada núm. 81 en SUMAC.
[16] Apéndice, pág. 572-624.
[17] Apéndice, pág. 627.
[18] Apéndice, págs. 630-656. Con su réplica, incluyeron el siguiente documento: Anejo 1-Toma de la deposición de José Nieves Irizarry.
[19] Apéndice, págs. 657-701. De su dúplica incluyó los siguientes documentos: Anejo 1-Toma de deposición de Raymond Chaparro Lorenzo; Anejo 2-Contestación a Primer Pliego de Interrogatorios y Solicitud de Producción de Documentos de Melany Guzmán Class y Anejo 3-Correo electrónico de Carlos Javier Morales emitido el 29 de marzo de 2022.
[20] Apéndice, pág. 702.

naves aéreas, transportar carga y pasajeros por medio de naves aéreas o cualquier equipo de transportación similar.

8. Para el 2 de junio de 2020, Blue Waters era la dueña registral del avión Piper Azteca Modelo PA-23-250, número de serie 27-4746, y número de registro N14181 (Piper).

9. El 5 de febrero de 2020, Pro Pilot emitió una cotización para la instalación de los *avionics* a nombre de Blue Waters, titular registral del Piper.

10. El 29 de mayo de 2020, Blue Waters emitió un cheque por la suma de $43,049.59 a nombre de Pro Pilot para el pago de los equipos y los trabajos de instalación de *avionics* solicitados.

11. Blue Waters pagó por los trabajos que Pro Pilot realizó en el Piper, que surgen del *Shop Order*.

12. Las instalaciones de *avionics* requerían un vuelo de prueba para confirmar el funcionamiento de las instalaciones y cumplir con los requerimientos de la FAA.

13. Para el 2 de junio de 2020, Galarza Guzmán se desempeñaba como empleado de Pro Pilot, una entidad con sede en el Aeropuerto de Isla Grande que se dedica, *inter alia*, a proveer servicios de reparación de aviones, incluyendo servicios y reparación de instrumentos y equipos de comunicación, radar y otros relacionados conocidos como *avionics*.

14. Para el 2 de junio de 2020, Galarza Guzmán realizaba trabajos como técnico de *avionics eletronics* para cuyo empleo contaba con una Certificación expedida, el 1ero de diciembre de 2017, por la *Electronic Technicians Association*.

15. Para el 2 de junio de 2020, Galarza Guzmán había sido empleado de Pro Pilot por aproximadamente 23 meses.

16. Pro Pilot asignó a Chaparro Lorenzo y a Galarza Guzmán llevar a cabo las instalaciones de los *avionics* en el Piper.

17. Torres Gavino era un piloto certificado por la FAA como *Airline Transport Pilot,* además de mecánico.

18. El 2 de junio de 2020, previo a que se ejecutara el vuelo de prueba del Piper, Torres Gavino procuró el combustible, a nombre de VAL, para dicha nave a la compañía Million Air.

19. El 2 de junio de 2020, el Piper se accidentó luego de despegar del Aeropuerto de Isla Grande (Ribas Dominicci), estrellándose en la Bahía de San Juan, cerca del Club Náutico.

20. Torres Gavino y Galarza Guzmán fallecieron en el accidente. Chaparro Lorenzo sobrevivió.

21. Torres Gavino y Galarza Guzmán fallecieron en el curso de sus empleos.

22. Antes de accidentarse el avión, Chaparro Lorenzo notó que Galarza Guzmán tenía el cinturón de seguridad abrochado.

23. En su deposición, Chaparro Lorenzo relató que perdió el conocimiento y no recuerda cómo salió del avión.

24. La causa de muerte de Galarza Guzmán fue trauma corporal e inhalación de agua.

25. El informe de hechos suscrito por el Agente Francisco Ramos de la División de Buzos de las Fuerzas Unidas de Rápida Acción (FURA) de la Policía de Puerto Rico indica que, al extraer los cuerpos del Piper, a Galarza Guzmán hubo que cortarle el cinturón.

26. Al 2 de junio de 2020, Pro Pilot tenía la póliza de seguro número 1912002964 vigente con la CFSE.

27. Al 2 de junio de 2020, VAL tenía la póliza de seguro número 3514083522 vigente con la CFSE.

28. Guzmán Class recibió compensación de la CFSE por el fallecimiento de Galarza Guzmán.

29. El 28 de junio de 2021, la CFSE notificó la decisión del Administrador de la CFSE y concedió compensación a la viuda e hijas de Torres Gavino por el accidente ocurrido en el curso de su empleo con VAL el 2 de junio de 2020.
30. Para el 2 de junio de 2020, Blue Waters no tenía empleados en nómina.
31. Guzmán Class fue declarada como única y universal heredera de Galarza Guzmán.[21]

A lo antes añadió las siguientes cuatro controversias que, a su entender, impiden la adjudicación de la totalidad de la reclamación por la vía sumaria, a saber:

1. Si existe un vínculo obrero-patronal entre Galarza y VAL -en el contexto de un contrato de obra o de servicios entre VAL, Blue Waters y Pro Pilot- que cobije a VAL bajo la doctrina de inmunidad patronal bajo la Ley Núm. 45, *supra.*
2. Si VAL, por medio de un contrato de obra o de servicios, coordinó las instalaciones de los *avionics* en la nave Piper con Pro Pilot, cumplió con su obligación subsidiaria de asegurar a los empleados de Pro Pilot y, por ende, le aplica la doctrina de patrono estatutario.
3. De no aplicar la inmunidad patronal, procede dilucidar si el piloto Torres Gavino incurrió en negligencia, por el [sic] cual su patrono VAL deba responder vicariamente.
4. De no aplicar la inmunidad patronal, procede determinar la extensión y la valorización de los daños en cuanto a los codemandantes Guzmán Class, Sepúlveda Guzmán y el propio perjudicado Galarza Guzmán.[22]

De otra parte, el foro primario tomó conocimiento sobre el hecho de que los demandantes se allanaron a la desestimación de la demanda únicamente en contra de Blue Waters. Sobre tales bases, desestimó con perjuicio dicha causa de acción y ordenó la continuación de los procesos en cuanto a las demás partes. En su análisis, el TPI destacó que, las controversias existentes son medulares. Determinó que, las incongruencias y las contradicciones en los documentos presentados no le permiten, en esta etapa de los procedimientos, establecer claramente la relación contractual de VAL con Blue Waters para así declarar a VAL como patrono estatutario.[23] Expuso que, la causa de acción por los daños que presuntamente sufrió Samuel Galarza Guzmán antes de morir no es aconsejable resolverla sumariamente debido a que atañe cuestiones de credibilidad.

---

[21] Apéndice, págs. 709-712.
[22] Apéndice, pág. 713.
[23] Apéndice págs. 719-720.

VAL y Starr solicitaron reconsideración el 5 de julio de 2023, y en ella, anejaron una declaración jurada suscrita por Carlos M. Rodríguez Colón.[24] A lo antes, se opuso la parte demandante el 20 de julio de 2023.[25] Acto seguido, replicaron VAL y Blue Waters el 21 de julio de 2023.[26] En respuesta, el TPI expuso lo siguiente: "Ha lugar. No se considerará la réplica. El asunto se había dado por sometido."[27]

El 26 de julio de 2023, VAL y Starr suplicaron que se diera por sometida (sin oposición de la CFSE) la moción de reconsideración presentada.[28] En atención a lo anterior, el 3 de agosto de 2023, el TPI notificó una *Resolución*[29] en la cual reiteró su decisión de no desestimar sumariamente la demanda en contra de VAL y Starr. Fundamentó que, existen incongruencias en cuanto a la prueba presentada por las partes. Entre otras, dos versiones contradictorias del testimonio de Carlos M. Rodríguez Colón, sin los apelantes explicar tal discrepancia. Basado en lo anterior, el foro primario resolvió que no considerará la segunda declaración para propósitos de reconsiderar su dictamen, a tenor de la doctrina de *sham affidavit.*

Inconforme, comparecieron Blue Waters, VAL y Starr y señalan los siguientes cuatro errores:

> Erró el TPI al haber dictado Sentencia Sumaria únicamente en cuanto a Blue Waters sin haber considerado o haber dado justo peso a los hechos materiales incontrovertidos que apoyaban la desestimación a favor de todas las partes demandadas, en claro abuso del ejercicio de su discreción.
>
> Erró el TPI al encontrar que la doctrina de "sham affidavit" fue aplicable en cuanto a la declaración jurada que se acompañó a la *Moción de reconsideración* de las apelantes.
>
> Erró el TPI al abusar de su discreción al no permitirle a las apelantes ser oídas en cuanto a los argumentos improcedentes de la parte demandante bajo la doctrina de "sham affidavit".

---

[24] Apéndice págs. 723-751.
[25] Apéndice págs.752-761.
[26] Apéndice, pág. 764.
[27] Apéndice, pág. 778.
[28] Apéndice, págs. 780-782.
[29] Apéndice, págs. 783-790.

En la alternativa, erró el TPI al no haber desestimado por ausencia de prueba la acción alegadamente heredada por Guzmán-Class basada en los daños supuestamente sufridos por el causante.

Por su parte, Melany Guzmán Class compareció mediante un alegato el 3 de octubre de 2023. Sin embargo, la CFSE no compareció. Procedemos a resolver.

## II.

### A. Sentencia Sumaria

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R.36, permite a los tribunales disponer, parcial o totalmente, de litigios civiles en aquellas situaciones en las cuales no existe controversia real y sustancial de un hecho material que requiera ventilarse en un juicio plenario, por lo cual solo resta aplicar el derecho. *Birriel Colón v. Supermercado Los Colobos (Econo Rial, Inc.) e Integrand Assurance Company,* 2023 TSPR 120, resuelto el 3 de octubre de 2023; *Oriental Bank v. Caballero García,* 2023 TSPR 103, resuelto el 23 de agosto de 2023. Este mecanismo lo puede utilizar la parte reclamante o aquella parte que se defiende de una reclamación. 32 LPRA Ap. V, R. 36.1 y 36.2.

Mediante el mecanismo de sentencia sumaria, se procura profundizar en las alegaciones para verificar si, en efecto, los hechos ameritan dilucidarse en un juicio. *León Torres v. Rivera Lebrón,* 204 DPR 20, 42 (2020). Este cauce sumario resulta beneficioso tanto para el tribunal, como para las partes en un pleito, pues se agiliza el proceso judicial, mientras simultáneamente se provee a los litigantes un mecanismo procesal encaminado a alcanzar un remedio justo, rápido y económico. *Serrano Picón v. Multinational Life Insurance Company,* 2023 TSPR 118, resuelto el 29 de septiembre de 2023*; Universal Insurance Company y otro v. Estado Libre Asociado de Puerto Rico y otros,* 2023 TSPR 24, resuelto el 7 de

marzo de 2023. Como se sabe, procede dictar sentencia sumaria si se desprende de las alegaciones, deposiciones, declaraciones juradas, contestaciones a interrogatorios, admisiones ofrecidas, entre otros, que no existe controversia real sustancial sobre un hecho esencial y pertinente, y siempre que el derecho aplicable así lo justifique. *González Meléndez v. Municipio Autónomo de San Juan y otros,* 2023 TSPR 95, resuelto el 24 de julio de 2023. De manera que, en aras de prevalecer en una reclamación, la parte promovente debe presentar prueba incontrovertible sobre todos los elementos indispensables de su causa de acción. *Íd.*

Nuestro ordenamiento civil y su jurisprudencia interpretativa impone unos requisitos de forma con los cuales hay que cumplir al momento de presentar una solicitud de sentencia sumaria, a saber: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. *Oriental Bank v. Caballero García,* supra. Véase, además, la Regla 36.3 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3. Si el promovente de la moción incumple con estos requisitos, "el tribunal no estará obligado a considerar su pedido". *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 111 (2015). Además, el promovente de una solicitud de sentencia sumaria ha de acompañar su petitorio con prueba de la cual surja preponderantemente la ausencia de

controversias sobre los hechos medulares del caso. *Birriel Colón v. Supermercado Los Colobos (Econo Rial, Inc.) e Integrand Assurance Company*, supra.

Cabe destacar que, "la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación". *León Torres v. Rivera Lebrón,* supra*,* pág. 43. Por el contrario, la Regla 36.3(c) de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(c), obliga a quien se opone a que se declare con lugar esta solicitud a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho el promovente puesto que, si incumple, corre el riesgo de que se dicte sentencia sumaria en su contra, si la misma procede en derecho. *Íd.* A esos efectos, deberá sustentar con evidencia sustancial los hechos materiales que entiende están en disputa. *Birriel Colón v. Supermercado Los Colobos (Econo Rial, Inc.) e Integrand Assurance Company*, supra.

Por ello, en la oposición a una solicitud de sentencia sumaria, el promovido debe puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte sentencia sumaria en su contra. *León Torres v. Rivera Lebrón,* supra. Claro está, para cada uno de estos supuestos, deberá hacer referencia a la prueba específica que sostiene su posición, según exigido por la antes citada Regla 36.3 de Procedimiento Civil. *Íd.* En otras palabras, la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. *Íd.* De lo anterior se puede colegir que, ante el incumplimiento de las partes con las formalidades de la Regla 36 de Procedimiento Civil de 2009, *supra,* la consideración de sus posiciones descansa en la sana discreción del Tribunal.

Al atender la solicitud, el Tribunal deberá asumir como ciertos los hechos no controvertidos que se encuentren sustentados por los documentos presentados por el promovente. *E.L.A. v. Cole*, 164 DPR 608, 626 (2005). Toda inferencia razonable que pueda surgir de los hechos y de los documentos se debe interpretar en contra de quien solicita la sentencia sumaria, pues sólo procede si bajo ningún supuesto de hechos prevalece el promovido. *Íd.*, pág. 625. Además, al evaluar los méritos de una solicitud de sentencia sumaria, el juzgador debe actuar guiado por la prudencia y ser consciente en todo momento que su determinación puede conllevar el que se prive a una de las partes de su "día en corte", componente integral del debido proceso de ley. *León Torres v. Rivera Lebrón,* supra*,* pág. 44.

Sin embargo, la sentencia sumaria generalmente no procederá cuando existan controversias sobre hechos esenciales materiales, o si la controversia del caso está basada en elementos subjetivos como intención, propósitos mentales, negligencia o credibilidad. *Segarra Rivera v. Int'l Shipping et al.*, 208 DPR 964 (2022). Además, existen casos que no se deben resolver mediante sentencia sumaria porque resulta difícil reunir la verdad de los hechos mediante declaraciones juradas o deposiciones. *Jusino et als. v. Walgreens*, 155 DPR 560, 579 (2001). De igual modo, no es apropiado resolver por la vía sumaria "casos complejos o casos que involucren cuestiones de interés público". *Íd.*

El Tribunal Supremo de Puerto Rico ha discutido los criterios que este Tribunal de Apelaciones debe considerar al momento de revisar una sentencia dictada sumariamente por el foro de instancia. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679-680 (2018); *Meléndez González et al. v. M. Cuebas*, supra, págs. 118-119. Nuestro más Alto Foro señaló que:

> [E]l Tribunal de Apelaciones debe: (1) examinar de *novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra,* y la jurisprudencia le exigen

al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas et al.,* supra, pág. 679.

Conforme a lo anterior, los foros apelativos nos encontramos en la misma posición que el Tribunal de Primera Instancia y utilizamos los mismos criterios para evaluar la procedencia de una sentencia sumaria. *González Meléndez v. Municipio Autónomo de San Juan y otros,* supra. Por ello, nuestra revisión es una *de novo,* y nuestro análisis debe regirse por las disposiciones de la Regla 36 de Procedimiento Civil, *supra,* y su jurisprudencia interpretativa. *González Santiago v. Baxter Healthcare,* 202 DPR 281, 291 (2019). De esta manera, si entendemos que los hechos materiales realmente están incontrovertidos, debemos revisar *de novo* si el foro primario aplicó correctamente el derecho. *Acevedo Arocho y otros v. Departamento de Hacienda de Puerto Rico y otros,* 2023 TSPR 80, resuelto el 26 de junio de 2023.

### B. Inmunidad Patronal

La Ley 45, *supra,* se creó para garantizar al obrero su compensación en contra de los riesgos a su salud que se relacionen con su trabajo. *Arzuaga Monserrate y otro v. Empresas Ortiz Brunet y otros,* 2023 TSPR 44, resuelto el 10 de abril de 2023. A esos fines, la Ley 45, *supra,* exige que los patronos realicen una aportación patronal para compensar a los obreros y empleados por sus lesiones, incapacidad productiva o muerte como resultado de un accidente o enfermedad ocupacional. Sobre este tema, el Tribunal Supremo expresó:

A cambio de esta aportación patronal, la ley ofrece al obrero lesionado una compensación segura, inmediata y cierta en comparación a una reclamación ordinaria en daños, mientras que reconoce la inmunidad del patrono asegurado contra acciones por daños y perjuicios de sus empleados. Además, la CFSE asume los gastos de tratamiento médico y compensación sin derecho a reembolso, independientemente de quien fue la negligencia. (Nota y cita omitida.) *Arzuaga Monserrate y otro v. Empresas Ortiz Brunet y otros*, supra.

Cabe señalar que, cuando la lesión, enfermedad o muerte del obrero sea imputable a un tercero, la Ley 45, *supra,* viabiliza que el Fondo se subrogue en los derechos del lesionado y reclame judicialmente al tercero responsable de los daños. *Íd.*

Con respecto a la cláusula de contratista que emana del Artículo 17 de la Ley 45, *supra,* nuestro más Alto Foro expresó que "es la que impone a los patronos -dueños de obras, principales, contratistas o subcontratistas- la responsabilidad subsidiaria de asegurar a los obreros de aquellos con los que contraten o ajusten." *SLG Ortiz-Cintrón v. Rivera Núñez et al.*, 194 DPR 936, 943 (2016). Cabe puntualizar que, el citado Artículo 17 obliga al patrono a asegurar con el Fondo a sus propios empleados y, de forma subsidiaria, a los trabajadores de los patronos con quienes contrató o subcontrató, si estos no aseguraron a sus empleados. *Íd.*

Por lo tanto, mediante la cláusula de contratista, los empleados de los contratistas o subcontratistas no asegurados quedan protegidos. *Íd.* Otro efecto de la cláusula de contratista es que, el patrono asegurado, sea real o estatutario, tiene inmunidad absoluta frente a las demandas sobre daños y perjuicios, aunque surjan producto de su negligencia crasa. *Íd.* Valga aclarar que, patrono real es el empleador, o sea, quien contrata directamente al empleado. *Caballer Rivera v. Adriel Toyota,* 200 DPR 120, 130 (2018). Mientras que, el patrono estatutario es quien contrata los servicios de otra empresa, e indirectamente, contrata también a los empleados de esta. *SLG Ortiz-Cintrón v. Rivera Núñez et al.*, supra. De manera que, cuando alguno de los patronos, a lo largo de la

misma cadena contractual, paga el seguro obrero-patronal al Fondo, beneficia a los demás patronos envueltos en el contrato de obra o servicio y les provee inmunidad en contra de las acciones de daños. *Íd.*

### C. *Sham affidavit*

En nuestra jurisdicción, el Tribunal Supremo de Puerto Rico acogió la norma federal denominada *sham affidavit doctrine*. *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414 (2013). Al amparo de esta doctrina, los tribunales están impedidos de considerar un testimonio reciente -suscrito por la parte adversa a la parte promovente de una solicitud de sentencia sumaria- que sea claramente incompatible con una declaración bajo juramento emitida anteriormente, si no ofrece una explicación adecuada para la nueva versión. *Íd.* Si la inconsistencia entre ambas declaraciones resulta evidente, el juzgador viene obligado a rechazar la declaración subsiguiente. *Íd.*

Cabe señalar que, la antedicha norma es de aplicación cuando la parte que se opone a que se dicte sentencia sumariamente presenta declaraciones inconsistentes como subterfugio para crear controversias de hechos materiales, con el único propósito de impedir la solución sumaria del asunto, práctica contraria al objetivo de la Regla 36 de Procedimiento Civil, *supra. Íd.* Lo anterior no se refiere a inconsistencias de poca trascendencia que surgen por errores o discrepancias de buena fe o producto de prueba descubierta posteriormente. *Íd.*

### III.

En su recurso, los apelantes impugnan como primer error la determinación del foro primario de denegar su petitorio sumario a pesar de que presuntamente no existen hechos materiales en controversia. En el segundo y tercer error los apelantes arguyen que, el TPI incidió al aplicar la doctrina de *sham affidavit* para no

considerar el segundo testimonio de Carlos M. Rodríguez Colón. Como último señalamiento de error los apelantes aducen que, el foro primario se equivocó al no desestimar, por falta de prueba, la reclamación de Guzmán Class sobre los daños que sufrió el causante producto del accidente hasta su fallecimiento.

Por su parte, los apelados en su Oposición argumentan que, el mero hecho de que VAL y Blue Waters sean consideradas un solo patrono bajo la Ley de Relaciones del Trabajo no conlleva necesariamente que también lo sean bajo la Ley de Compensaciones por Accidentes del Trabajo. Lo antes, en la medida en que, cada patrono paga las primas conforme a sus riesgos. Añaden que, los apelantes no explicaron a qué se debió el segundo testimonio incompatible que ofreció Carlos M. Rodríguez Colón, conforme lo requiere la doctrina de *sham affidavit*. *SLG Zapata-Rivera v. J.F. Montalvo*, supra. Por último, arguyen que el TPI actuó correctamente al no desestimar la reclamación de daños heredable debido a que, según el informe de autopsia, la causa de muerte de Samuel Galarza Guzmán fue por ahogamiento. Por su estrecha relación entre sí, discutiremos conjuntamente los errores señalados.

En cumplimiento con el deber que nos impone *Meléndez González et al. v. M. Cuebas*, supra, revisamos *de novo* la moción dispositiva de los apelantes y su correspondiente oposición. De igual manera, debemos evaluar si las partes cumplieron con los requisitos de forma dispuestos en la Regla 36 de Procedimiento Civil, *supra*. Superado lo anterior, debemos determinar si, en el presente caso, existen hechos materiales en controversia que impiden resolver sumariamente este asunto.

Al analizar el petitorio sumario de los apelantes constatamos que, cumplieron con las formalidades que establece la Regla 36.3(a) de Procedimiento Civil, *supra.* Con relación a los méritos de la causa, en esencia argumentaron que, el piloto Torres Gavino laboraba como

*chief pilot* de Blue Waters.[30] Adujeron que, VAL y Blue Waters firmaron un acuerdo mediante el cual VAL presuntamente se comprometió a la compra e instalación del equipo necesario para que el avión Piper Azteca N14181 cumpliera con las reglamentaciones federales.[31] Alegaron, además, que VAL tenía una póliza de seguro con cubierta para el avión Piper Azteca N14181 y para Blue Waters que concede inmunidad absoluta tanto a VAL como a Blue Waters.[32] Aseguraron que, existe un vínculo obrero-patronal indirecto entre VAL, Blue Waters y el causante, Samuel Galarza Guzmán y que su fallecimiento ocurrió como resultado de su relación laboral.

Separadamente, instaron una *Solicitud de Sentencia Sumaria Parcial en la Alternativa de no Concederse la Solicitud Dispositiva Radicada en esta Misma Fecha.* En ella expusieron que, los apelados carecen de evidencia suficiente para demostrar que Samuel Galarza Guzmán estuvo consciente luego de que el avión en el cual viajaba impactó el mar y para sustentar que este sufrió daños y angustias mentales desde el impacto hasta su muerte.

De otra parte, los apelados en su Oposición también cumplieron con las formalidades Regla 36.3 (b) de Procedimiento Civil, *supra.* Primeramente, se allanaron a que el TPI desestimara la reclamación en contra de Blue Waters bajo la doctrina de patrono estatutario. Además, argumentaron que, de los Anejos 1 y 2 que sometieron los apelantes no se colige que VAL y Blue Waters tengan una administración y un fin común, compartiendo accionistas, directores, oficiales y empleados. Añadieron que, según declaró en su deposición el Sr. Carlos M. Rodríguez Colón, Blue Waters no tenía empleados. Lo antes para controvertir la alegación de los apelantes

---

[30] Contestaciones y Objeciones a Primer Pliego de Interrogatorio y Solicitud de Producción de Documentos, Anejo 4, Apéndice, págs. 201-205.
[31] Anejo 11, Apéndice, pág. 257.
[32] Véase, Carta firmada por Carlos M. Rodríguez Colón, Anejo 12, Apéndice pág. 258.

de que el piloto Torres Gavino era director de operaciones de Blue Waters lo cual, a su entender, imposibilita la aplicación de la doctrina de inmunidad patronal.

Allí también los apelados expresaron que, los Exhibits 4, 5 y 6 anejados junto a su Oposición demuestran que Blue Waters, no VAL, contrató y pagó a Propilot la instalación de los equipos de *avionics* en el avión Piper Azteca N14181.[33] Aseguraron que, según la declaración jurada de Luis Alberto Irizarry Porrata, Blue Waters no tenía autorización para operar como línea aérea, por lo cual, no podía tener como empleado a Luis Torres Gavino en calidad de *Chief Pilot*.[34] Por último, señalaron que, la teoría de los apelantes de que Samuel Galarza Guzmán quedó inconsciente con el impacto sin sufrir daños heredables es especulativa e infundada.

Luego de examinar *de novo* el petitorio sumario de los apelantes, la Oposición de los apelados y el voluminoso apéndice ante nuestra consideración, concluimos que los apelados lograron demostrar que existen hechos medulares en controversia que impiden la solución sumaria de este asunto. En particular, existe controversia con respecto a cuál es la cadena contractual entre Blue Waters, VAL y Propilot y si VAL le aplica la inmunidad patronal bajo la Ley 45, *supra*.

Puntualizamos que, no surge inequívocamente de los anejos que obran en el expediente ante esta Curia que VAL y Blue Waters sean un mismo patrono con iguales accionistas, directores, oficiales y empleados. Además, y a pesar de que, por definición no se configura el *sham affidavit* en este caso, colegimos que, surgen claras contradicciones sobre este asunto debido a que Carlos M. Rodríguez Colón ofreció testimonios incongruentes sobre el particular inicialmente durante la deposición y posteriormente en la

---

[33] Apéndice, págs. 579-581.
[34] Exhibit 1 de la Oposición, Apéndice, págs. 572-575.

declaración jurada que los apelantes sometieron junto a su petitorio de reconsideración ante el TPI.

En virtud de lo anterior, coincidimos con el foro primario en cuanto a que existen controversias medulares los cuales impiden la adjudicación la causa por la vía sumaria, en en esta etapa de los procesos.[35]

Por último, convenimos que, con respecto a la reclamación de los daños, el foro primario no incidió al consignar (como la controversia número 4) que, de no aplicar la inmunidad patronal, procedería entonces dilucidar las controversias medulares sobre la extensión y la valorización de los presuntos daños en cuanto a los codemandantes Guzmán Class, Sepúlveda Guzmán y el propio perjudicado Galarza Guzmán. De nuestra evaluación *de novo*, no identificamos que el foro primario haya errado en posponer su determinación sobre el tema de resarcimiento de los daños y sobre si los daños del perjudicado son heredables los cuales ciertamente envuelven asuntos de credibilidad.

Basado en lo anterior y de conformidad con la facultad que nos confirió el Tribunal Supremo en *Meléndez González et al. v. M. Cuebas, supra,* reconocemos que el TPI actuó correctamente al declarar no ha lugar la solicitud de sentencia sumaria de los apelantes y al ordenar la continuación de los procedimientos. Los errores señalados no se cometieron.

**IV.**

Por todo lo anterior, confirmamos la *Sentencia Parcial* apelada.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[35] Apéndice, pág. 713.