Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| ISAAC SANTANA CASTRO<br><br>Apelante<br><br>v.<br><br>WALMART PUERTO RICO, INC.; ET AL<br><br>Apelado | KLAN202301054 | Apelación procedente del Tribunal de Primera Instancia, Sala de Fajardo<br><br>Sobre:<br>Daños y Perjuicios<br><br>Caso Número:<br>FA2022CV01052 |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, la Juez Grana Martínez y el Juez Pérez Ocasio

Domínguez Irizarry, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 27 de marzo de 2024.

El apelante, señor Isaac Santana Castro, comparece ante nos para que revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala de Fajardo, el 5 de septiembre de 2023, notificada el 6 de septiembre del mismo año. Mediante la misma, el foro primario declaró *Ha Lugar* una *Moción en Solicitud de Sentencia Sumaria* promovida por la parte apelada, Wal-Mart de Puerto Rico, y, en consecuencia, desestimó una demanda sobre daños y perjuicios incoada por el apelante.

Por los fundamentos que expondremos a continuación, se confirma la *Sentencia* apelada.

### I

El apelante es empleado de Plaza Provision Company (Plaza Provision), desde el año 1999. A la fecha del 7 de junio de 2019, era "vendedor merchandiser" para dicha compañía. Entre sus labores, se encontraban el visitar establecimientos para colocar la mercancía en góndolas y neveras y hacer rotación de productos, lo cual incluía verificar fechas de expiración. El apelante acudía a los establecimientos en su propio vehículo y se reportaba al encargado

del departamento correspondiente para las tareas propias a su empleo.

El 7 de junio de 2019, el apelante se encontraba colocando mercancía en las neveras del establecimiento Amigo del centro comercial Monte Sol en Ceiba. Según surge, cuando caminaba por el pasillo en el que se encontraba ejerciendo sus funciones, resbaló a causa de que el suelo estaba mojado. Como resultado, sufrió una caída que precisó de atención médica, a través de la Corporación del Fondo de Seguro del Estado, toda vez que, Plaza Provision era un patrono asegurado a la fecha del accidente. El apelante fue dado de alta el 21 de abril de 2022.

El 26 de octubre de 2022, el apelante presentó la demanda de epígrafe en contra de, entre otras partes, la entidad aquí apelada. En la misma, alegó que, al momento de los hechos, Wal-Mart operaba el supermercado en el que se accidentó. En esencia, planteó que esta fue negligente al no observar la diligencia ni el cuidado requerido para mantener las facilidades del establecimiento en condiciones seguras para sus visitantes.  A su vez, indicó que la parte apelada también incumplió al no tener un protocolo de seguridad sobre ocurrencia, manejo y prevención de accidentes en el lugar. De este modo, afirmó que fue la responsable de los daños y angustias mentales resultantes de su caída, por lo que reclamó una compensación total de $140,000.00.

El 28 de diciembre de 2022, la apelada Wal-Mart contestó la demanda de autos y negó la responsabilidad que se le imputó. Ahora bien, levantó la defensa de inmunidad patronal, así como la aplicabilidad de la doctrina de patrono estatutario.  Así, al amparo de ello, solicitó la desestimación de la causa de acción promovida en su contra.

Tras varias incidencias, el 31 de mayo de 2023, la parte apelada presentó una *Moción en Solicitud de Sentencia Sumaria.* En

la misma, afirmó que no existía controversia de hechos en cuanto a que la norma del patrono estatutario le era oponible. Al abundar, expuso que, para la fecha del accidente, el apelante se encontraba realizando funciones para su patrono, Plaza Provision, quien, a dicha fecha, era un patrono asegurado a tenor con las disposiciones de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1935, 11 LPRA sec. 1 *et seq.* Sostuvo que, siendo Plaza Provision el patrono directo del apelante, y estando debidamente cobijado por la inmunidad patronal, dicha salvaguarda le era de extensión. Ello, puesto a que, para el momento del accidente, tenían una relación contractual a través de la cual los empleados de Plaza Provision le ofrecían ciertos servicios, entre los que figuraban los asignados al puesto del apelante. Sobre este particular, la apelada añadió que, tanto en su demanda, como en la deposición a la que fue sometido, el apelante admitió que, el día del su accidente, realizaba labores en beneficio de Wal-Mart, ello por razón del vínculo jurídico habido con su patrono, Plaza Provision, y en la ejecución de sus funciones como empleado de este.

A la luz de tales afirmaciones, la entidad apelada expuso que la norma vigente reconocía que un patrono estatutario es aquel que contrata los servicios de otra compañía, y que se beneficia de los trabajadores de esta. Expresó que siendo un patrono indirecto que contrata con el patrono real del obrero que ejerce el servicio a su favor, únicamente está obligado a asegurarlo solo cuando este no lo haya hecho. Enfatizó que, en el escenario de que el patrono real haya asegurado a sus empleados, el patrono estatutario o indirecto, queda cobijado por la inmunidad patronal derivada de la Ley Núm. 45, *supra.* De este modo, apoyándose en los referidos argumentos legales, la apelada afirmó que no existía controversia de hechos en cuanto a que al apelante no le asistía causa de acción en su contra.

Así, solicitó al Tribunal de Primera Instancia que dictara sentencia sumaria a su favor desestimando la demanda de epígrafe.[1]

Tras varias incidencias, el 10 de julio de 2023, el apelante presentó su *Oposición a Moción en Solicitud de Sentencia Sumaria.* En el pliego, expresó que los argumentos de la parte apelada carecían de eficacia, toda vez que la figura del patrono estatutario no resultaba de aplicación al caso. En apoyo a su argumento, señaló que, contrario a lo aducido por la apelada Wal-Mart, el contrato existente entre ella y Plaza Provision no era uno de servicio, sino uno de compraventa mercantil, consistente en la reventa de productos con ánimo de lucro. El apelante expresó que, de conformidad con lo establecido por la jurisprudencia interpretativa vigente, la inmunidad patronal provista por la Ley Núm. 45, *supra,* no se extiende a las relaciones contractuales de dicha naturaleza, hecho que le impedía a la parte apelada reclamar su protección. Al abundar, sostuvo que el ordenamiento jurídico contempla la coexistencia de la figura del patrono real y la del patrono estatutario, solo cuando entre ellos converge una relación contractual derivada, exclusivamente, de un contrato o subcontrato de obras y servicios, y solo para aquellos dueños de obra o contratistas que, respecto al empleado lesionado, tienen una obligación de asegurarlo. De este modo, y tras sostenerse en que la naturaleza del vínculo habido entre su patrono Plaza Provision y la apelada Wal-Mart no gozaba de la protección legal en controversia, el apelante expresó que resultaba meritorio auscultar los términos del acuerdo entre ambas empresas, ello mediante el trámite ordinario de adjudicación. Así, peticionó que se denegara la solicitud de sentencia sumaria

---

[1] La apelada Wal-Mart acompañó su *Moción en Solicitud de Sentencia Sumaria* con la siguiente prueba documental: 1) certificación expedida por la Corporación del Fondo de Seguro del Estado acreditando que, para el 7 de junio de 2019, Plaza Provision era un patrono asegurado y; 2) copia de *Transcripción de Deposición* del apelante, con fecha del 1 de mayo de 2023.

promovida por la entidad apelada y se proveyera para la celebración de una vista.[2]

El 7 de agosto de 2023, la apelada Wal-Mart presentó su escrito de *Réplica a Moción en Oposición a Solicitud de Sentencia Sumaria.* En esencia, expuso que el apelante incumplió con las normas procesales establecidas para legitimar la eficacia de su escrito. A su vez, reprodujo su previa afirmación en cuanto a que el apelante admitió que, el día del accidente en litigio, ejercía múltiples funciones, análogas a las de un gondolero, todo a los fines de brindarle ciertos servicios previamente contratados con su patrono real, y esenciales para el establecimiento en el que acontecieron los hechos. La parte apelada indicó que ello, de por sí, derrotaba la postura del apelante sobre que se dedicaba a la venta de productos por parte de su patrono real, lo que evidenciaba la inexistencia de controversia de hechos alguna que impidiera la disposición sumaria del asunto. Para reforzar su contención, sostuvo que el apelante estaba asignado al establecimiento desde hacía varios años, visitándolo de dos (2) a tres (3) veces en semana, reportándose ante el encargado del departamento pertinente y ejerciendo sus funciones en las góndolas del local. Al amparo de ello, la entidad apelada afirmó que su relación contractual con Plaza Provision no era solo una de compraventa, sino también de servicios y obras como los ejecutados por el apelante el día en cuestión. Así, pues, la apelada Wal-Mart se reafirmó en la procedencia de la adjudicación sumaria de la controversia, a los fines de desestimar la demanda de epígrafe.

El 9 de septiembre de 2023, el Tribunal de Primera Instancia notificó la *Sentencia* que nos ocupa y declaró *Ha Lugar* la solicitud de sentencia sumaria promovida por la entidad apelada. El foro

---

[2] Del expediente de autos no surge que el apelante haya acompañado su pliego con documento alguno en apoyo a su contención. No obstante, con fecha del 20 de julio de 2023, el apelante presentó una *Moción Suplementando la Oposición a la Sentencia Sumaria* con la cual acompañó copia de una *Sentencia* emitida por este Tribunal el 19 de julio de 2023, en el recurso KLCE202300435.

primario concluyó que la prueba sometida a su consideración demostró que, a la fecha del accidente en disputa, Plaza Provision, patrono real del apelante, y la apelada Wal-Mart, existía una relación contractual consistente en el suministro de mercancía, que incluía un componente de servicios de su entrega y colocación en los establecimientos de la empresa compelida. Añadió, el tribunal, que dichas funciones se diferenciaban de los efectos propios de un contrato de compraventa y que, contrario a este tipo de vínculo, las mismas encontraban cabida en las disposiciones y protección de la Ley Núm. 45, *supra.* De este modo, el Tribunal de Primera Instancia resolvió que, dado a que, el día del accidente, el apelante ejerció las referidas tareas, ello como parte de su empleo y en beneficio de la apelada Wal-Mart, esta advino a ser un patrono estatutario amparado por la inmunidad patronal contemplada en la precitada Ley. Así, determinó que el apelante no controvirtió los hechos establecidos por la parte apelada, por lo que desestimó con perjuicio la causa de acción de epígrafe.

Inconforme, y tras denegada una previa solicitud de reconsideración, el 27 de noviembre de 2023, el apelante compareció ante nos mediante el presente recurso de apelación. En el mismo formula el siguiente señalamiento:

> Erró el Honorable Tribunal de Primera Instancia al determinar sumariamente que la inmunidad patronal que cobija a Plaza Provision Company, patrono del demandante-apelante Isaac Santana Castro, se extiende al demandado-apelado Wal-Mart bajo la figura de Patrono Estatutario sin haber evaluado el contrato, contrario a los resuelto por el Tribunal Supremo De Puerto Rico, en *Atiles Moréu, Admor v. Comisión Industrial,* 67 DPR 503 (1947), reafirmado en *Santiago Hodge v. Parke Davis Co.,* 126 DPR 1 (1990) y *Ortiz Jiménez v. Rivera Núñez y Otros,* 194 DPR 936 (2016).

Luego de examinar el expediente de autos y con el beneficio de la comparecencia de ambas partes de epígrafe, procedemos a disponer del asunto.

**II**

**A**

La Regla 36.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1, permite a una parte que solicite un remedio presentar una moción para que se dicte sentencia sumaria a su favor sobre la totalidad o cualquier parte de esta. Así, el tribunal podrá dictar sentencia sumaria parcial para resolver cualquier controversia que sea separable de las controversias restantes. 32 LPRA Ap. V, R. 36.1; *Oriental Bank v. Caballero García*, 2023 TSPR 103, 212 DPR ___ (2023); *Camaleglo v. Dorado Wings, Inc.*, 118 DPR 20, 25 (1986). Este mecanismo procesal es un remedio de carácter extraordinario y discrecional. Su fin es favorecer la más pronta y justa solución de un pleito que carece de controversias genuinas sobre los hechos materiales y esenciales de la causa que trate. *Segarra Rivera v. Int'l Shipping et al.*, 208 DPR 964, 979 (2022); *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018); *Roldán Flores v. M. Cuebas et al.,* 199 DPR 664, 676 (2018). Un hecho material es "aquel que puede alterar el resultado de la reclamación de acuerdo al derecho aplicable". *Segarra Rivera v. Int'l Shipping et al.*, supra, pág. 980. De este modo, y debido a la ausencia de criterios que indiquen la existencia de una disputa real en el asunto, el juzgador de hechos puede disponer del mismo sin la necesidad de celebrar un juicio en su fondo. *Universal Ins. y otro v. ELA y Otros,* 211 DPR 455, 457 (2023); *León Torres v. Rivera Lebrón*, 204 DPR 20, 41 (2020); *Luan Invest. Corp. v. Rexach Const. Co.,* 152 DPR 652, 665 (2000).

La doctrina considera que el uso apropiado de este recurso contribuye a descongestionar los calendarios judiciales y fomenta así los principios de celeridad y economía procesal que gobiernan nuestro ordenamiento jurídico. *Segarra Rivera v. Int'l Shipping et al.*, supra, págs. 979-980*; Vera v. Dr. Bravo,* 161 DPR 308, 331-332

(2004). Por tanto, la sentencia sumaria permite la pronta adjudicación de las controversias cuando una audiencia formal resulta en una dilación innecesaria de la tarea judicial. Así pues, esta solo debe ser utilizada en casos claros, cuando el tribunal tenga ante sí la verdad de todos los hechos esenciales alegados en la demanda y falte solo disponer de las controversias de derecho existentes. *Roldán Flores v. M. Cuebas et al.,* supra, pág. 676; *Vera v. Dr. Bravo,* supra, pág. 334; *PFZ Props., Inc. v. Gen. Acc. Ins. Co.,* 136 DPR 881, 911-912 (1994).

La parte promovente de una solicitud de sentencia sumaria está obligada a establecer mediante prueba admisible en evidencia la inexistencia de una controversia real respecto a los hechos materiales y esenciales de la acción. Además, deberá demostrar que, a la luz del derecho sustantivo, amerita que se dicte sentencia a su favor. *Rodríguez García v. UCA,* supra, pág. 941; *Ramos Pérez v. Univisión,* 178 DPR 200, 218 (2010); *Vera v. Dr. Bravo,* supra, pág. 333. Para que tal sea el resultado, viene llamado a desglosar en párrafos numerados los hechos respecto a los cuales aduce que no existe disputa alguna. Una vez expuestos, debe especificar la página o párrafo de la declaración jurada u otra prueba admisible que sirven de apoyo a su contención. 32 LPRA Ap. V, R. 36.3(a)(4); *Roldán Flores v. M. Cuebas, et al.*, supra pág. 677; *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 432-433 (2013).

Para derrotar una moción de sentencia sumaria, la parte que se opone a la misma viene llamada a presentar declaraciones juradas o documentos que controviertan las alegaciones pertinentes. 32 LPRA Ap. V, R. 36.5. Por ello, tiene la obligación de exponer de forma detallada aquellos hechos relacionados al asunto que evidencien la existencia de una controversia real que deba ventilarse en un juicio plenario. *Roldán Flores v. M. Cuebas, et al.*, supra, pág. 678; *SLG Zapata-Rivera v. J.F. Montalvo,* supra, pág.

434; *Rodríguez de Oller v. TOLIC,* 171 DPR 293, 311 (2007). En esta tarea, tiene el deber de citar específicamente los párrafos, según enumerados por el promovente, sobre los cuales estima que existe una genuina controversia y, para cada uno de los que pretende controvertir, detallar de manera precisa la evidencia que sostiene su impugnación. Regla 36.3(b)(2) de Procedimiento Civil, *supra*; *SLG Zapata-Rivera v. J.F. Montalvo,* supra, pág. 433.

Cuando de las propias alegaciones, admisiones o declaraciones juradas surge una controversia *bona fide* de hechos, la moción de sentencia sumaria resulta ser improcedente. Ante ello, el tribunal competente debe abstenerse de dictar sentencia sumaria en el caso y cualquier duda en su ánimo lo debe llevar a resolver en contra de dicha solicitud. *Vera v. Dr. Bravo,* supra, pág. 333-334*; Mgmt. Adm. Servs., Corp. v. ELA,* 152 DPR 599, 611 (2000). Al evaluar la solicitud de sentencia sumaria, el tribunal debe cerciorarse de la total inexistencia de una genuina controversia de hechos. *Rodríguez García v. UCA,* supra, pág. 941; *Roig Com. Bank v. Rosario Cirino,* 126 DPR 613, 618 (1990). Lo anterior responde a que todo litigante tiene derecho a un juicio en su fondo cuando existe la más mínima duda sobre la certeza de los hechos materiales y esenciales de la reclamación que se atienda. *Sucn. Maldonado v. Sucn. Maldonado,* 166 DPR 154, 185 (2005). Por ese motivo, previo a utilizar dicho mecanismo, el tribunal deberá analizar los documentos que acompañan la correspondiente solicitud junto con aquellos sometidos por la parte que se opone a la misma y los otros documentos que obren en el expediente del tribunal. Iguales criterios debe considerar un tribunal apelativo al ejercer su función revisora respecto a la evaluación de un dictamen del Tribunal de Primera Instancia emitido sumariamente. *Segarra Rivera v. Int'l Shipping et al.*, supra, pág. 981-982; *Meléndez González et al. v. M.*

*Cuebas,* 193 DPR 100, 114 (2015); *Vera v. Dr. Bravo,* supra, pág. 334.

En *Meléndez González et al. v. M. Cuebas,* supra, págs. 118-119, el Tribunal Supremo de Puerto Rico estableció el estándar específico a emplearse por este foro apelativo intermedio al revisar las determinaciones del foro primario con relación a los dictámenes de sentencias sumarias. A tal fin, se expresó como sigue:

> **Primero,** reafirmamos lo que establecimos en *Vera v. Dr. Bravo,* supra, a saber: el Tribunal de Apelaciones se encuentra en la misma posición del Tribunal de Primera Instancia al momento de revisar Solicitudes de Sentencia Sumaria. En ese sentido, está regido por la Regla 36 de Procedimiento Civil, *supra,* y aplicará los mismos criterios que esa regla y la jurisprudencia le exigen al foro primario. Obviamente, el foro apelativo intermedio estará limitado en el sentido de que no puede tomar en consideración evidencia que las partes no presentaron ante el Tribunal de Primera Instancia y no puede adjudicar los hechos materiales en controversia, ya que ello le compete al foro primario luego de celebrado un juicio en su fondo. La revisión del Tribunal de Apelaciones es una *de novo* y debe examinar el expediente de la manera más favorable a favor de la parte que se opuso a la Moción de Sentencia Sumaria en el foro primario, llevando a cabo todas las inferencias permisibles a su favor.

> **Segundo,** por estar en la misma posición que el foro primario, el Tribunal de Apelaciones debe revisar que tanto la Moción de Sentencia Sumaria como su Oposición cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra,* y discutidos en *SLG Zapata-Rivera v. JF Montalvo,* supra.

> **Tercero,** en el caso de revisión de una Sentencia dictada sumariamente, el Tribunal de Apelaciones debe revisar si en realidad existen hechos materiales en controversia. De haberlos, el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos. Esta determinación puede hacerse en la Sentencia que disponga del caso y puede hacer referencia al listado numerado de hechos incontrovertidos que emitió el foro primario en su Sentencia.

> **Cuarto,** y por último, de encontrar que los hechos materiales realmente están incontrovertidos, el foro apelativo intermedio procederá entonces a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.

**B**

Por su parte, en virtud de la Ley de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1935, 11 LPRA sec. 1, *et seq.,* según enmendada, el legislador confirió a nuestro ordenamiento legal un precepto de carácter remedial capaz de ofrecer al obrero lesionado una alternativa eficiente, tanto para prevenir los accidentes o enfermedades que pudieran surgir en su taller de empleo, como para mitigar las lesiones existentes asociadas al mismo. *Matías v. Mun. de Lares,* 150 DPR 546, 554 (2000). Así pues, se le garantiza "al trabajador lesionado el mejor y más rápido tratamiento que la ciencia médica sea capaz de proveerle de manera que este pueda reintegrarse a su empleo regular, totalmente restablecido de sus lesiones, a la mayor brevedad posible". 11 LPRA sec. 1a(b).

La referida Ley le impone a todo patrono la obligación de dar cubierta a sus empleados por medio de una aportación anual a un plan de seguro, a manera de compensación por las enfermedades o lesiones acaecidas en el curso de su trabajo. 11 LPRA sec. 19; *López Cotto v. Western Auto,* 171 DPR 185, 193 (2007). El pago de la referida póliza le confiere la cualidad de *asegurado,* por lo que el obrero accidentado está impedido de proseguir una demanda sobre daños y perjuicios en contra de su empleador. *Arzuaga Monserrate v. Empresas Ortiz Brunet, Inc.*, 211 DPR 803, 811 (2023). De ahí que se reconozca que la política pública que integra la Ley Núm. 45, *supra,* es que el patrono posee inmunidad contra dicho tipo de causas de acción. *Íd.* La doctrina estima que el referido mecanismo no constituye una defensa a favor del patrono asegurado, sino que implica la ausencia total de nexo causal entre él y el daño reclamado. *López Cotto v. Western Auto, supra,* pág. 194. Siendo así, el empleado lesionado solo tiene como remedio las provisiones compensatorias que le otorga el Artículo 18 de la Ley Núm. 45-1935,

*supra.* 11 LPRA sec. 21; *Martínez v. Bristol Myers, Inc.,* 147 DPR 383, 398 (1999); *Santiago Hodge v. Parke Davis Co.,* supra, pág. 8.

Ahora bien, la inmunidad patronal provista por la Ley Núm. 45, *supra,* se extiende al *patrono estatutario* del obrero contra demandas por daños y perjuicios, incluidas aquellas que surjan debido a su negligencia crasa. *SLG Ortiz-Cintrón v. Rivera Núñez,* 194 DPR 936, 942 (2016). La referida figura aplica a los "dueños de obras y principales a quienes la ley impone la obligación de asegurar a los empleados de los contratistas que aquellos contraten para la ejecución de obras y servicios cuando estos no los tengan asegurados". *Íd,* págs. 942-943. En lo que nos ocupa, la doctrina interpretativa vigente reconoce la coexistencia entre el patrono real y el patrono estatutario. El patrono real -el contratista- es aquel con quien los empleados mantienen la relación de trabajo directa, regular o principal. Por su parte, el patrono estatutario es aquel para quien los empleados realizan la labor contratada en un momento determinado, por virtud de la relación contractual surgida entre éste y su patrono regular. *Martínez v. Bristol Myers, Inc.,* supra, págs. 395-396. A tenor con ello, el estado de derecho afirma que "[l]a determinación de si un demandado es o no patrono estatutario, depende de las relaciones contractuales entre dicho demandado y el patrono real de los obreros". *Íd.,* pág. 396. Por tanto, en ausencia de nexo jurídico que relacione al patrono real o directo del empleado con el causante de la lesión reclamada, no se está frente a un patrono estatutario, sino, ante un tercero no protegido por la inmunidad patronal. *Martínez v. Bristol Myers, Inc.,* supra, pág. 397; *Santiago Hodge v. Parke Davis Co.,* supra, pág. 12. Así, la norma establece que la determinación en cuanto a si un demandado es o no patrono estatutario es una conclusión mixta de hecho y de derecho, que dependerá fundamentalmente de las relaciones jurídicas entre el patrono real y aquel que invoque la

inmunidad patronal provista por ley. *SLG Ortiz-Cintrón v. Rivera Núñez*, supra, pág. 943.

En, *Santiago Hodge v. Parke Davis Co.,* supra, el Tribunal Supremo de Puerto Rico reconoció que la Ley Núm. 45, *supra,* en su Artículo 17, contiene lo que se conoce como la "cláusula de contratista". *SLG Ortiz-Cintrón v. Rivera Núñez,* pág. 943. La misma impone a los patronos -dueños de obras, principales, contratistas o subcontratistas- la responsabilidad subsidiaria de asegurar a los obreros de aquellos con los que contraten. *Íd.* Así, la aludida cláusula busca garantizar una compensación al empleado, ello con independencia de qué patrono le pague, y de los grados contractuales en los cuales se puedan encontrar el presunto patrono y el obrero lesionado. *Íd,* pág. 947. Por tanto, tal cual expuesto, "[l]o fundamental es que exista un vínculo principal y agente entre los que asumen el rol de "patrono" y "empleado", y que el accidente haya ocurrido como consecuencia de esta relación laboral". *Íd.*

Ahora bien, nuestra jurisprudencia únicamente ha reconocido la figura del patrono estatutario dentro del contexto de un contrato o subcontrato de obra o de servicios, y solo para aquellos dueños de obra, principales contratistas o subcontratistas que tuvieran, con relación al trabajador lesionado, la obligación legal común de asegurarlo con el Fondo. *Santiago Hodge v. Parke Davis, Co.*, supra, pág. 8; *FSE v. ELA*, 111 DPR 402, 405 (1981). El entendido doctrinal vigente reconoce que el Tribunal Supremo se ha negado a extender la protección aquí en controversia, ello en caso de que el vínculo jurídico entre un patrono real y un patrono estatutario sea uno de compraventa. *Atiles, Admor. v. Comisión Industrial,* 67 DPR 503 (1947).

**III**

En la causa de epígrafe, el apelante plantea que el Tribunal de Primera Instancia erró al dictar sentencia sumaria en su contra

y, en consecuencia, al desestimar la demanda de epígrafe. Conforme alega, el foro primario incidió al intimar que la inmunidad patronal de la cual se beneficia su patrono real, Plaza Provision, es extensible a la apelada Wal-Mart bajo la figura del patrono estatutario. Habiendo examinado su señalamiento, a la luz de los hechos establecidos y de la norma aplicable, confirmamos la sentencia sumaria apelada.

Un examen del expediente que nos ocupa nos lleva a concluir que el pronunciamiento que atendemos es uno conforme a derecho y a la prueba presentada. De los documentos de autos, no surge controversia alguna de hechos medulares que amerite dirimir el presente asunto mediante el cauce ordinario de adjudicación. Tras ejercer nuestras funciones revisoras, coincidimos con que, en el presente caso, concurren las condiciones procesales propias a la eficacia del mecanismo adjudicativo empleado por la sala sentenciadora. Igualmente, intimamos que la sentencia apelada responde a una adecuada interpretación y aplicación del derecho pertinente a la materia que atendemos, ello respecto al nexo jurídico obrero patronal en el que se sostiene la validez de lo resuelto. Además, es menester destacar que, en su escrito en oposición a la solicitud de sentencia sumaria adjudicada, el apelante incumplió con los criterios procesales aplicables, al no controvertir, ni cuestionar, en la forma requerida, los hechos propuestos por la parte apelada.

Ciertamente, las propias admisiones del apelante, ello en cuanto a las funciones que desempeñaba el día del accidente en litigio, gozan de la suficiencia necesaria para acreditar la naturaleza de la relación contractual habida entre su patrono y la apelada Wal-Mart. La prueba demostró que, como parte de sus labores como empleado de Plaza Provision, suministraba mercancía en los establecimientos pertenecientes a la aquí apelada. Según se

dispuso, el apelante se reportaba a los encargados del área de los lugares en los que venía llamado a ejecutar su trabajo, entre ellos, el supermercado en el que se accidentó. A su vez, este, colocaba, rotaba y verificaba la mercancía a entregarse, funciones que, tal cual lo resuelto, tienen un efecto jurídico distinto al que se produce mediante un acuerdo de compraventa. En los contratos de compraventa, el solo intercambio de las contraprestaciones acordadas constituye el debido cumplimiento. Sin embargo, en el presente caso, la continuidad en el ejercicio de las funciones laborales del apelante, evidencian que entre las empresas aquí concernidas existe un contrato de servicios por este ejecutado que redunda en extender a la apelada Wal-Mart la inmunidad que, en virtud de la condición de asegurado al momento del accidente, le asistía a Plaza Provision.

El expediente que nos ocupa nos ha permitido constatar que las determinaciones emitidas por el Tribunal de Primera Instancia encuentran apoyo legal y fáctico en los documentos presentados. El pronunciamiento apelado interpreta y aplica correctamente la norma vigente en nuestro estado de derecho, ello a la luz de una juiciosa y razonable apreciación de la prueba que ante el tribunal primario se presentó. De este modo, dado a que el apelante no controvirtió los hechos establecidos por la parte apelada, resolvemos que no existe controversia de hechos alguna sobre la corrección de la desestimación resuelta. Toda vez la cadena de patronos involucrados y de vínculos contractuales existentes entre las partes, la apelada Wal-Mart no es ajena a la relación obrero patronal que vincula al apelante, por lo que es un patrono estatutario, protegido por la inmunidad patronal consignada en la Ley Núm. 45, *supra.*

**IV**

Por los fundamentos que anteceden, se confirma la sentencia sumaria apelada.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones